## James Burden v. The People.

*Jury:   Challenges:   Statute construed.*   It is not a good cause of challenge to a juror, under the statute (*Sess. L., 1869. p. 106*, § *3*) authorizing a challenge of any person who "has served as a juror upon the regular panel, or as a talesman, in such court, at any time within one year previous to such challenge," that he had been summoned upon the regular panel for that term, and had already sat on the trial of one cause at the same term; the service as a juror upon the regular panel, intended by the statute, is for the whole term, and not merely for one case.

*Evidence:   Cross-examination:   Error cured.*   On a trial for murder, where the defense set up is that the killing was done in self-defense, the exclusion of questions, on cross-examination of the witnesses for the prosecution, as to statements made by the prisoner soon after the killing, concerning bruises on his person, and how he received them, if erroneous, was cured by allowing the defense to examine the witnesses fully on their own behalf, and to call out the facts by like questions.

*Prisoner's statement:   Evidence.*   It is competent for the prosecution, after the defendant has made his statement, to give evidence, within the proper limits of rebutting testimony, to disprove such statement.

*Evidence:   Exception.*   The question whether there was any evidence tending to establish malice, will not be considered on error, in the absence of any ruling or exception raising the point.

*Murder:   Self-defense:   Intent:   Malice.*   On a trial for murder, where the defense is that the act was committed in self-defense, and the purpose to kill is not so much in issue as the necessity of the killing for self-protection, an instruction to the jury, in substance, that the crime was murder, if the defendant had the purpose to take life, without some qualification, is erroneous.

*Heard October 29.   Decided November 7.*

Error to Genesee Circuit.

*William Newton* and *E. H. Thompson,* for the plaintiff in error.

*Dwight May, Attorney General,* for the People.

COOLEY, J.

Plaintiff in ·error was charged with the murder of Daniel Soules, on the third day of June, 1870, and has been convicted of murder in the second degree.   The undisputed facts in the case, as we gather from the record, are these: Soules worked the farm of Burden, and occupied a part of

his dwelling house, Burden living alone in the other part. Previous to the day of the homicide, they had had some difficulty on one or more occasions, but during the forenoon of that day, they had been at work on the highway together, and returned to the house at noon in the same wagon, and in apparent harmony. The cattle which had drawn the wagon were taken off in the rear of the house, and while Soules remained there for a little work, he directed his son, eighteen years of age, who had been at work with them, to take the cattle to feed on the grass in front of the house. Burden, in the meantime, had gone into the house, and seated himself at the window to read. Seeing the cattle brought into his part of the front yard, he went out and complained, with some apparent feeling, that his young trees or shrubs would be destroyed, and Soules, hearing the complaint, or being informed of it, directed his son to lead the cattle to the other side of the yard, which he did. Soon after this Soules came around in front of the house, where Burden then was, and some words passed between them, followed by blows; Soules, as the evidence tends to show, striking once or more with a thin piece of board, three or four inches in width. Burden then ran into the house, caught up a loaded gun which stood six or eight feet from his front door, and stepping back to the door, where Soules then was, shot him down, killing him almost instantly. In this general outline of the facts, the witnesses, consisting of the family of Soules, and the defendant, are in substantial agreement; but in regard to accompanying circumstances which characterize the transaction, and tend to show the presence or absence of criminal intent, the discrepancies in the evidence are very serious. Burden claims to have been acting in self-defense throughout.

The first exception taken on the trial relates to the over-

ruling of a challenge to a juror for cause. The juror, it appears, had been summoned upon the regular panel for the term, and the cause of exception assigned was, that he had already sat on the trial of one cause at the same term. The question arises under the statute of 1869 (*Sess. L.*, *1869, p. 106*, § *3*), which provides that, "It shall be a good cause of challenge to any juror, in any court of record in this state, in addition to the other causes of challenge allowed by law, that such person has served as a juror upon the regular panel, or as a talesman, in such court, at any time within one year previous to such challenge." The objection assumes that a person can sit as a juror upon the trial of one cause only within a year; but the circuit judge ruled that to serve as a juror upon the regular panel, means to serve for the term, and not merely for one case. If this ruling is erroneous, it must be obvious that the summoning of a regular panel of jurors for a term, has become a very useless ceremony, for all trials, after the first one or two, must be in the main by jurors summoned specially. We are not aware that this construction has ever been insisted upon in any other case, and it obviously rests upon a very narrow and literal interpretation of the words made use of in the statute. Before we can accept it, we ought to be able to see that it accords with the apparent intent of the legislature, and tends to remedy the evil at which the statute was aimed. That evil we understand to have been, the summoning upon juries, of a class of persons who were known as *professionals;* persons who, from a disinclination to steady employment, and sometimes from more reprehensible motives, either through the favor of officers or by solicitation, succeeded in being summoned to an important duty, the responsibilities of which they did not feel, and the trust imposed, it was sometimes their purpose to abuse. If the regular panel is so far done away with

by this statute, it is easy to perceive that the responsibility and authority of the officer in summoning juries, is at the same time in like proportion increased, and a long step is taken in the direction of introducing new evils of the same general nature with those the statute sought to preclude.   We have no doubt whatever, that the circuit judge was correct in this ruling.

It is also assigned for error that witnesses who were on the ground soon after the homicide, were not allowed to testify what Burden said to them concerning bruises on his person, and how he received them.   It appears from the record, that the questions by which these statements were sought to be called out, were put on the cross-examination of witnesses for the prosecution; and the objection seems to have been, that they were not proper on cross-examination, because the prosecution had not inquired concerning these statements or bruises.   We are not disposed to discuss the question, whether the rule of cross-examination was not somewhat strictly applied in the case, inasmuch as the defense were allowed to examine the witnesses fully on their own behalf, and called out the facts in response to the like questions to those which had been overruled.   The error, therefore, if any was committed, was fully cured.

Objection was also taken to the admission of evidence on the part of the prosecution, after the defendant had made his statement, the purpose of which was, to disprove some things he had stated.   We do not understand the objection to be, that this evidence went beyond the proper limits of rebutting testimony; but the broad ground is taken, that the statement of the defendant in criminal cases, is not to be contradicted at all, but is to be received at the conclusion of the examination of witnesses, as the prisoner's explanation of all the circumstances, and to receive from the jury such consideration as it appears to them

intrinsically to deserve. And this position is thought to receive some support from the previous decisions of this court.

The previous decisions under the act which permits the prisoner to make his statement to the jury, have had in view: *First,* to establish such rules as would enable him to make his statement as full and particular as he might be able under the embarrassments of his position, and as he might see fit, and at the same time to protect him in his constitutional right to refrain from giving evidence against himself, if he should insist upon it; and *second,* to relieve the jury of any arbitrary standards of comparison, when they come to weigh the credibility of his testimony against that of other witnesses. But it has never been held or intimated, that the prisoner was not to be contradicted; and if the statute were susceptible of such a construction, the legislation, which has proved in so high degree beneficent and just, might easily, in the case of the most dangerous offenders, become a protection to crime, instead of the shield to innocence it was designed to be.

The view we take of the prisoner's *statement, is fully* explained in *People v. Thomas, 9 Mich., 314; Durant v. People, 13 Mich., 351;* and *Annis v. People, 13 Mich., 511.* It is evidence in the case, and the jury may give it the importance they think it deserves. But considering it evidence, all the reasons which admit testimony to rebut the evidence of new matter brought forward by the witnesses for the defense, apply to it with equal force. His statement comes in answer to the case of the prosecution, and if he goes beyond that case to speak of other matters which he may suppose to have a bearing in his favor, he has no claim, in reason or justice, to exemption from contradiction. The same purpose of impartiality which induced the legislature to abrogate the harsh rule of the common law which

precluded his being heard, also requires that other persons, having knowledge of facts to which he speaks, should be heard in explanation, that the truth of the case may be reached, if possible. It should be, and it is, the object of the law to permit, and to encourage the bringing forward in proper order, every thing which bears upon the transaction, and which falls within the established rules of competency and relevancy.

It is also assigned for error, "that there was no evidence given on the trial, as appears by all the evidence set forth in the record, tending to establish malice prepense, express or implied." We have looked in vain, through the record, for any exception which warrants this assignment. We do not, and cannot review the facts, however fully the evidence may be set forth in the bill of exceptions. The prisoner, if he desired to raise this question, should have requested a specific charge from the circuit judge, that no evidence tending to show malice, appeared; and if the request was refused, we might then have looked into the evidence, to see whether, in our opinion, it should have been granted. But that course does not appear to have been taken in this case.

There is, however, an exception to the several instructions given by the court on request of the prosecution. One of these instructions was the following: "That the intent to kill need not be formed by the prisoner for any particular time before the fatal blow or shot is given; the crime is murder, if the intent to take life be formed at any time by the prisoner before the fatal blow be given." This was given by the court, with the following explanation: "In this connection I will state that, as further explanatory of the term malice,—for under this request to charge, you have to consider, of course, that ingredient,—that the

term malice does not, of necessity, involve long deliberation; that it is sufficient, if the intent clearly defined in the mind, existed prior to the act, and the word malice, in this connection, would indicate, perhaps, a design, in contradistinction to accident and mischance." This request, as well as the explanation, could only be true in connection with further explanations, and were evidently misleading, where the purpose to kill was not so much in issue as the necessity of the killing to self-defense; for, the jury were, in substance, told that the crime was murder if defendant had the purpose to take life; and this, without any qualification whatever. Now, although the defendant may fully have purposed at the time of the killing, to take the life of Soules, yet it might have been on such provocation as would reduce the offense to manslaughter; or, if the purpose was formed in the belief, forced upon the defendant by appearances, that it was necessary in self-defense, it is manifest that the act was not only not murder, but that it was not criminal at all. And the case is not helped by the explanation which makes design the test of malice, while accident and mischance are put by contrast with it, as the circumstances which preclude the act from being murder. The defense was not rested on the ground of accident or mischance, and the design was scarcely disputed; but nevertheless the malice, if the theory of the defense should be accepted by the jury, was wholly precluded by the facts shown.

There are other portions of the charge which laid down the rule of law upon the subject with proper accuracy; but as we cannot say with confidence, that the error in the portion did not mislead the jury, we are under the necessity of reversing the judgment, and awarding a new trial.

CHRISTIANCY, CH. J., and GRAVES, J., concurred.

CAMPBELL, J.

The rebutting testimony in this case, would all have been admissible had the defendant made no statement, and his statement could not, therefore, render it inadmissible.

Had it gone further, I am not at present prepared to hold it would have been proper. Upon that, I reserve my opinion. I concur in all other respects, with the opinion of the court.