STATE v. ASBERRY THORNE.

*Juror—Indictment—Burning Gin House—Statutes Construed— Punishment.*

1. One who had been summoned on a special venire, but not drawn on the jury, within two years next preceding the term of court at which he is summoned as a talesman, is not thereby disqualified under the act of 1879, ch. 200. To render such talesman incompetent, it must be shown that he "has acted" or served upon a jury within the time prescribed by the act.

2. An indictment for burning a gin house charging the offence to have been done unlawfully, *maliciously* and feloniously, is sufficient under

the act of 1869, ch. 167, § 5. The words used in the bill as descriptive of the intent imply that the act was done *"wilfully."*

3. An indictment for such offence under the act of 1875, ch. 228, cannot be supported; though where it was intended to be drawn thereunder, and is sufficient under the former act, a conviction will be sustained. The two are not inconsistent, but the words "any house" in the latter act do not include "gin house."

4. Where the punishment imposed by the sentence of a court is unauthorized, the judgment will be reversed and the case remanded to the end that a legal judgment may be pronounced.

INDICTMENT under the act of 1874–'75, ch. 228, for burning a Gin House tried at Spring Term, 1879, of EDGECOMBE Superior Court before *Eure, J.*

The bill charged that the defendant did unlawfully, maliciously and feloniously set fire to and burn the gin house of V. B. Sharpe and W. H. Weathersbee, the gin house being used for the purpose of ginning cotton, and in the possession of said owners, Sharpe and Weathersbee, and with the intent to injure and defraud them, contrary, &c.

During the trial a juror was called as a talesman and challenged by the defendant for cause under the act of 1879, ch. 200, and it appeared that within the two years next preceding said term of the court, he had been summoned on a special venire issued in a case of felony then pending, and had attended court under the summons, but a jury being had before his name was drawn, he did not serve thereon. The cause of challenge was held to be insufficient. Defendant excepted, and then challenged the juror peremptorily, and before a full jury had been drawn, the defendant exhausted his peremptory challenges.

The evidence in the case was that the defendant burned the gin house in the night time; that the gin house was used for ginning cotton the property of said Sharpe and Weathersbee; but there was no evidence that they ginned cotton other than their own. The defendant asked the court

to charge the jury, 1. That there was no evidence the defendant had done any act made criminal or penal by the statute under which the indictment is drawn, and that the gin house used as above set forth was not in the scope or purview of that statute. 2. That the act in Bat. Rev., ch. 32, § 6, was in force and has not been repealed, and defendant cannot be convicted under that act because the indictment does not charge the burning to have been done *wilfully*, and that the words used in the indictment are not a sufficient substitute for the word "wilfully," and that the jury should acquit the defendant. The court declined to charge as requested, and defendant excepted. Verdict of guilty, judgment that the defendant be confined at hard labor in the penitentiary for twenty years, appeal by defendant.

*Attorney General,* for the State.
*Messrs. W. B. Rodman* and *W. P. Williamson,* for defendant.

SMITH, C. J. The indictment charges that the defendant did unlawfully, maliciously and feloniously set fire to and burn a gin house of V. B. Sharpe and W. H. Weathersbee with intent to injure and defraud them, and the jury find him guilty.

The act of April 10th, 1869, makes "the wilful burning of any gin house or tobacco barn, or any part thereof, or in the night time, any stable containing a horse or horses, or a mule or mules," an offence punishable by confinement in the state's prison from five to ten years. Bat. Rev., ch. 32, § 6.

Subsequently the act of March 22nd, 1875, was passed, which declares the unlawful and malicious setting fire "to any church, chapel or meeting house," or "to *any house*, stable, coach house, out-house, warehouse, office, shop, mill, barn or granary," or "to any building or erection used in carrying on any trade or manufacture, or any branch thereof, whether the same or any of them respectively shall then be

in the possession of the offender, or in the possession of any other person, with intent thereby to injure or defraud any person," to be a felony for which on conviction, the offender shall be subject to confinement in the state's prison for a term " not less than five nor more than forty years." Laws 1874-'75, ch. 228.

The indictment is intended to be drawn, and the judgment of the court pronounced, under the last act.

During the trial an exception was taken by the defendant to the overruling of his challenge to a tales juror tendered, based on the act of March 12th, 1879, for the reason " that such juror has acted in the same court as grand or petty juror within two years next preceding such term of the court." Laws, 1879, ch. 200. The facts do not come within the statute, and the objection is not tenable. The juror had been summoned on a special venire and had attended a term of the court within that time, but his name was not drawn, and a jury being obtained without him, he was discharged. The disqualification attaches to the juror who " has acted" or served as such, and not to one who has been at the court under a summons, liable only to be called on for such service. The juror was therefore not incompetent.

The defendant further excepts to the sufficiency of the bill of indictment to warrant judgment against him under either of the before recited acts :

1. Not under the latter, for the reason that a gin house is not named among the houses and buildings mentioned therein, and is not therefore within its scope and operation; nor

2. Under the first, for that, the bill fails to allege the burning to have been " *wilfully* " done.

The acts are not inconsistent, nor does the one interfere with and supersede the other, though both relate to the offence of burning houses. The first is confined to a few designated buildings, the wilful burning of which, and of

one containing a horse or mule when done in the night season only, is made an indictable offence. The other extends to houses and other buildings, specifically named, and requires as constituents of the crime that the act be done maliciously and with an intention to injure or defraud the owner, which are not ingredients in the criminal act described and denounced in the former. A gin house is not mentioned in the latter act, and unless embraced in the word "house," is not within its scope and meaning. The question suggests itself, if the word is used in its most comprehensive sense and is intended to include every kind and form of building or structure, why are others mentioned at all? The enumeration would be upon such a construction wholly superfluous. The term must have a more restricted import, and such seems to be the interpretation put upon similar language contained in the English statute of 7 and 8, George IV, ch. 30, § 2, which punishes the burning of "any house, stable, coach house, outhouse, warehouse, office, shop, mill, malt house, hopoast, barn or granary, or any building or erection used in carrying on any trade or manufacture, or any branch thereof." A house, in the latin, *domus*, is a dwelling place or mansion, as known at common law, distinguishable as such from all other buildings, used for different purposes, and entitled to peculiar favor and protection. Hence in the old forms of indictment for arson, the subject of the offence is sufficiently described as the "house" of the prosecutor, which imports it to be a dwelling house. 2 East P. C., 1020 and 1033; *Rex* v. *Donevan*, 2 Wm. Bl., 682; 1 Leach Cr. Cases, 69. In the same sense must the word be understood in our act, and hence the burning of a gin house is not under its condemnation.

But in our opinion the conviction may be sustained under the prior act of April 10th, 1869. While the indictment makes allegations not required by the act, it embodies every charge essential to the constitution of the crime, and the

unnecessary averments may be treated as harmless surplusage. They do not vitiate a verdict which finds them all to be true, nor afford ground for an arrest of judgment.

For the defendant, the substitution of the words "unlawfully, *maliciously* and feloniously" as descriptive of the defendant's intent in place of the "*wilful*" burning mentioned in the act, is relied on as a fatal defect in the bill. The objection is without force. It is difficult to conceive how an act can be done *maliciously* and not *wilfully*. The former is the more comprehensive and includes the latter. And so it is held that the charge that perjury had been committed "falsely, maliciously, wickedly and corruptly, implied that it was done *wilfully*." 2 Whar. Cr. Law, § 1673, and authorities referred to in note.

The punishment imposed in the sentence of the court is however in excess of that authorized by the act of 1869, and the judgment must be reversed. This will be certified to the end that judgment be pronounced according to law, as declared in this opinion.

Error.                    Reversed and remanded.