### STATE v. THOMAS WHITFIELD.

*Jurors—Talesmen— Witness—Corroboration of—Evidence.*

1. A juror summoned on a special *venire* is not rendered incompetent because he has served on the jury in the same court within two years. Only tales-jurors come within the *proviso* of sec. 1733 of *The Code*, and in order that they may be disqualified, it must appear that they have not only been summoned, but have acted as jurors within that time.

2. Where a witness has been impeached, in order to corroborate him, he may be allowed to testify to statements made by him about the same matter shortly after it occurred, corroborating his evidence given on the trial.

3. A witness may be discredited by the nature of his evidence, by the circumstances surrounding him, or by imputations directed against him on cross-examination, as well as by direct evidence introduced to show the untruthfulness of his testimony.

(*State* v. *Thorne*, 81 N. C., 555; *State* v. *Brittain*, 89 N. C., 481; *State* v. *Twitty*, 2 Hawks, 449; *State* v. *George*, 8 Ired., 324; *State* v. *Dove*, 10 Ired., 469; *March* v. *Harrell*, 1 Jones, 329; *Jones* v. *Jones*, 80 N. C., 246; *State* v. *Mitchell*, 89 N. C., 521, cited and approved).

INDICTMENT for larceny, tried before *Meares, Judge,* and a jury, at February Term, 1885, of NEW HANOVER Criminal Court.

The defendant was indicted and charged with the larceny of some salted bacon sides, the property of J. M. Hardwick.

In selecting the jury, after exhausting all of his peremptory challenges, the defendant offered to challenge two jurors upon the ground that they had served on the jury in this court within the past two years. These jurors had been drawn on the special *venire* on the day previous to serve as jurors on the day of this trial, in pursuance of Ch. 300, §1, of the Laws of 1883. The Court overruled the challenges, and the defendant excepted.

The State offered evidence to prove that the store of J. M. Hardwick, situated in the city of Wilmington, was broken open and robbed of two salted bacon sides, weighing over forty pounds, and some other articles.

H. Terry, a witness for the State, testified that he was a police-man, and at about 4 o'clock on the morning of December 12, 1884, he entered the lot whereon Hardwick's store was located, for the purpose of waking another policeman, who slept there, and discovered that there was a lamp burning in the store, and that the back door was open, and that a man was in the store; that he had a good view of the man's features and dress, except his pants, and that he was of a "gingerbread" color, with square shoulders, side whiskers from one-half to three-quarters of an inch in length, chin clean shaved, wore a black coat, checked shirt, and that he supposed he would weigh about one hundred and forty pounds; that he had often seen him before but did not know his name, and was certain that the prisoner was the man; that he pursued this man, but could not catch him, and that he returned and awakened Hardwick, the owner of the goods in the store. The solicitor then asked the witness, if at this time, he gave the same description of the man whom he had seen in the store to Hardwick, which he had just given on the stand? The prisoner objected, but His Honor permitted the question to be put, and the prisoner excepted. The witness answered that he had.

This witness further testified that the next morning he accompanied Hardwick down the street to attempt to find the person whom he had seen in the store the night before, and that after going some distance he saw the defendant, and at once pointed him out to Hardwick and told him that he was the man they were looking for; that he arrested the defendant, and that his personal appearance and clothing were precisely similar to the description he had before given to Hardwick, and the same as he had sworn to at the trial.

The defendant objected to that portion of this evidence which related to the description and appearance being the same.

J. M. Hardwick was then introduced for the State and corroborated the witness Terry. After objection, the witness was allowed to testify that at the hearing before the committing magistrate,

the prisoner requested that one ———— Hall, a woman, should be summoned as witness for him.

The State introduced evidence that the witness Terry was a man of good character.

The defendant introduced evidence tending to prove an *alibi*.

There was a verdict of guilty, judgment, and appeal by the defendant.

*Attorney General* and *Mr. E. C. Smith*, for the State.
*Mr. J. D. Bellamy*, for the defendant.

MERRIMON, J. The defendant having challenged peremptorily as many jurors as the statute applicable in such cases allowed him to do, challenged two other jurors for cause, and assigned as ground of challenge that each of them " had served on the jury *in that court* within the past two years," and were disqualified under the *proviso* of *The Code*, §1733, which provides "that it shall be a disqualification and ground of challenge to any *tales juror* that such juror has *acted* in the same court as grand, petit or tales juror within two years next preceding such term of the court."

We are of opinion that the Court properly disallowed the ground of challenge assigned. The two jurors had been drawn upon the *special venire* the day before they were so challenged, as required by the statute (acts 1883, ch. 300, sec. 1,) applicable to the Criminal Court of the city of Wilmington. They were not *tales jurors*, but of a *special venire*, drawn and summoned before they were required to serve. They were different in their type from talesmen, and the statute cited makes a distinction between the two classes. They did not come within the terms of the *proviso* quoted above, nor within the mischief to be remedied by it. But if they had been talesmen, this objection was not good, because it did not appear that they had acted as jurors within two years. To render them disqualified they must have *acted* within that time. *State* v. *Thorne*, 81 N. C., 555; *State* v. *Brittain*, 89 N. C., 481.

53

The witness Terry, a policeman, had sworn very positively to facts and circumstances that went strongly to prove the guilt of the defendant. The defendant, and two other witnesses in his behalf, swore to facts tending to prove that what Terry had sworn was not true, and the obvious purpose and effect of this testimony, if believed, was to contradict and discredit him. The purpose was to impeach his testimony. It was, therefore, competent for the State to corroborate the prosecuting witness by showing that he had given the person whose goods were stolen the same description of the defendant before he arrested him, as that testified to by him on the trial; and, for the like purpose, it was competent to show that this witness, as he testified he had done, had pointed out the defendant on the sidewalk to the same person to whom he had given the description, as the person whom he had seen in the store, and that he then arrested him.

That a witness impeached may be thus corroborated is settled in this State, and such corroborating evidence is not confined to cases where the adverse party produces evidence of statements made by the witness *inconsistent* with what he testified to on the trial. In *State* v. *Twitty*, 2 Hawks, 449, Chief Justice Taylor having reference to this subject said: " It seems to me not to be a just construction of the case of *Luttrell* v. *Reynell*, 1 Mod. Rep., 284, to consider the confirmatory evidence as offered in chief; for suspicion may be thrown on the evidence of a witness, from the nature of his evidence, from the situation of the witness, or from imputations directed against him in the cross-examination, which may be not less effectual in discrediting him than direct evidence brought to impeach his testimony, and equally call upon the party introducing him for confirmatory evidence." This authority was afterwards recognized and approved in *State* v. *George*, 8 Ired., 324; *State* v. *Dove*, 10 Ired., 469; *March* v. *Harrell*, 1 Jones, 329; *Jones* v. *Jones*, 80 N. C., 246; *State* v. *Mitchell*, 89 N. C., 521.

The purpose of such evidence is not to prove the principal facts to be established, it is intended to prop and strengthen a witness, testifying in respect to such facts, in some way impeached, by showing his consistency in the statements he makes, or the

account he gives of the matter about which he testifies, when, and when not under oath. It tends to help his credibility, just as does evidence of his good character, or other evidence competent for such purpose.

The witness impeached, as well as others, is competent to testify as to such consistency. He, like other witnesses, may testify as to any pertinent, competent facts within his knowledge. We cannot see why he may not. In such case he might have promptings to prove his consistency, that others might not have, and thus be more inclined not to testify truly, but this goes to the weight of his testimony and not to its competency. The question whether the impeached witness was competent to testify as to his consistent statements previously made in respect to the matter about which he testified on the trial, was decided in the affirmative in *State* v. *George, supra.* In that case, Battle, Judge, said: "The subordinate question is, whether such confirmatory testimony can be given by the impeached witness himself; that is, can he testify to his former declaration, consistent with his testimony given on the trial. The majority of us, —Nash, Judge, *dissentiente*—hold that he can, and we so hold because we are unable to discover any principle by which the testimony can be excluded. We have all just agreed that the question is a proper one to be asked of *some* witness, and why may it not be answered by *any* witness who is not forbidden to answer it on any one or more of the grounds of objection to the competency of witnesses." Such evidence is not of a high type, but, such as it is, it is received or rejected like other evidence.

The testimony of the witness Hardwick, the admission of which was made the ground of an exception, was not material, and was of slight or no importance, but any objection to it was obviated when the defendant undertook, on the trial, to establish the defence suggested before the committing magistrate. It does not appear that it prejudiced him in any respect.

As the credibility of the prosecuting witness was put in question, it is manifest that the evidence as to his good character was competent and properly admitted.

There is no error in the judgment of the Criminal Court. Let this opinion be certified to that Court to the end that it may take further action according to law.   It is so ordered.

No Error.                                    Affirmed.