## THE STATE OF KANSAS v. WILLIAM B. LOWE.

### No. 10467.

1. LARCENY—*Sufficient Information.* In an information charging the defendant with killing cattle with intent to steal the carcasses, under section 83 of the act regulating crimes and punishments, it is not indispensable that the word "wilfully" be used. If all the averments of the information taken together show that the cattle were killed by the defendant for the purpose and with the intent to steal the carcasses, it is a sufficient statement of a wilful killing.

2. JUROR—*Challenge Properly Overruled.* A challenge of a juror on the ground that he has served as a juror in a court of record during the year next preceding the trial, under section 3 of chapter 54 of the General Statutes of 1889, is not good unless it is shown that the juror actually sat in the trial of a case. Where it appeared that he was merely summoned on the regular panel at a preceding term of the court, but that he was discharged on the first day of his attendance because there were no jury cases to try, the challenge was properly overruled.

3. ———— *Not Disqualified.* It is the duty of the assessors to enter on the assessment rolls the names of all persons having property to list for taxation, whether exceeding in value the constitutional exemption or not; and a township assessor, by failing to so enter the name of a person who is duly assessed and is otherwise qualified to sit as a juror on the trial of causes in the district court, cannot thereby disqualify him from serving as such juror.

4. ———— *Trial of a Challenge.* The trial of a challenge of a juror for cause in a criminal case is summary in its character, and, while the court may receive evidence other than that of the challenged juror himself, the judgment will not be reversed merely because of the refusal of a judge to hear the testimony of other witnesses on the trial of a challenge, where the juror's own testimony shows him to be competent.

### *Appeal from Morton District Court.*

WILLIAM B. LOWE, convicted of killing cattle with the intent to steal their carcasses, appeals. The material facts are stated in the opinion herein, filed March 7, 1896.

*George Getty,* for appellant.

*F. B. Dawes*, attorney general, *G. Porter Craddock*, county attorney, and *A. B. Reeves*, for The State.

The opinion of the court was delivered by

ALLEN, J. : The information charges

"That on the 20th day of February, 1895, in said county of Morton and state of Kansas, one William B. Lowe and one Al. Lawder, then and there being, did then and there, unlawfully and feloniously, kill certain neat cattle, the property of J. N. and J. W. Beaty, partners as Beaty Bros., to wit, one red brindle cow, five years old, of the value of $15 ; one red and white spotted cow, three years old, of the value of $15 ; one red and white spotted steer, four years old, of the value of $25 — then and there with the intent, then and there, unlawfully and feloniously to steal, take and carry away and convert to their own use the carcasses of said animals so killed as aforesaid."

On this charge the appellant was tried, convicted, and sentenced to confinement in the penitentiary for the term of two years. He appeals, and assigns numerous errors in the proceedings of the court. There is nothing substantial in the plea of abatement. The only difference pointed out between the complaint filed before the justice of the peace and the information is, that in the complaint three persons were charged with killing the cattle, while in the information two only are named. The sufficiency of the information was challenged by a motion to quash. The criticism of it is that section 83 of the act regulating crimes and punishments, under which the information is filed, in defining the offense uses the word "wilfully," while the information charges the defendants with having "unlawfully and feloniously" killed the cattle. It is contended that neither the word "unlawfully" nor "feloniously" is synony-

mous with the word "wilfully," and that an act may be both unlawful and felonious, and yet not be wilfully done. Conceding that this is true, we yet think the information sufficient. It charges that the defendants killed the cattle with the intent to steal and convert to their own use the carcasses. It is not necessary that the information should contain the precise words used in the statute. It is sufficient if every element of the offense, as defined in the law, is clearly charged in the information. If the defendants killed the cattle with a definite purpose and intent to convert the carcasses to their own use, the killing must necessarily have been intentional and wilful. The idea of an accidental killing is excluded by the statement of the purpose of the defendants in doing the act. One of the grounds on which the defendant asked that the information be quashed is that it was not duly verified. The form of verification used by the county attorney is not commendable. It would be as easy to allege directly, that he is informed and verily believes the matters stated in the information to be true, as to state that they are true to the best of his knowledge and belief, and it is always better to comply strictly with the requirements of the statute ; but such a defect has never been regarded as sufficient ground for reversing a judgment. On the contrary, the cases hold informations so verified sufficient. (*The State v. Ladenberger*, 44 Kan. 261 ; *The State v. Stoffel*, 48 id. 364.)

Numerous errors are assigned on the action of the court in impaneling the jury. A challenge to the array was sustained, but most of the jurors who had been summoned on the regular panel were included in the special venire and called into the jury-box. This was entirely proper. They were not personally

disqualified. (*The State v. Yordi*, 30 Kan. 221.) It appears that three of the jurors had been summoned on the regular panel of jurors for the February term. This case was tried in October following. It is claimed that they were therefore disqualified, under section 3, chaper 14, of the General Statutes of 1889, which makes the fact that any person called as a juror has served in that capacity at any term of the court during the year next preceding a good cause of challenge. These persons, though summoned as jurors, did not actually serve, but were discharged without having been called to try any case, there being no jury cases to try. This is not sufficient to disqualify them under the law. To afford a sufficient ground of challenge they must have actually served as jurors — must have sat as such in the trial of a case.

It is claimed that the juror Jackson was disqualified because his name did not appear on the assessment roll for the preceding year. It was admitted by the prosecutor that his name did not appear on the roll. The juror, however, testified that Mr. Hamilton was the assessor of his township, and assessed him in the year 1894, and that he made a statement on which he was assessed. The amount of property he possessed is not stated. It is probable that the valuation of his property was less than $200, and the assessor may have deemed it unnecessary to place his name on the assessment roll for that reason. His name should have been placed on the roll if he had any property to list, whether it was of sufficient value to render any portion of it taxable or not. (*The State, ex rel., v. Comm'rs of Phillips Co.*, 26 Kan. 419.) The failure of the assessor to enter his name on the roll when it was his duty to have done so does not disqualify him as a juror. Although the statements in the record are

meager, and do not definitely show that the juror had property, as they do show that he was in fact assessed, we cannot, for the purpose of reversing the judgment of the trial court, assume that he had no property. We must rather interpret the record so as to uphold the ruling of the trial court, when it is fairly susceptible of such interpretation.

The juror Bitner was examined with reference to statements it was claimed he had made concerning the guilt of the defendant after having been called as a juror, during the adjournment of the court. He denied having made any statements of the kind alleged. Thereupon the defendant asked leave to introduce witnesses to prove that he had made such statements, but the court refused to hear them. While the court undoubtedly has the right to hear testimony other than the statements of the juror himself as to his competency to sit, and is not absolutely concluded by the juror's statements, it would be a very extreme case where a reviewing court would be authorized to reverse a judgment because the trial court refused to have other witnesses sworn to testify with reference to the competency of a juror. Such a proceeding has not been generally regarded as permissible, and the court ought not to spend time unnecessarily in trying a preliminary question of this character. We could only reverse the judgment on the ground that an incompetent juror had been retained when the undisputed testimony showed him to be incompetent. No matter how many witnesses might have contradicted the juror in this case, the court still had the power to overrule the challenge. The peremptory challenges allowed the defendant are ordinarily quite sufficient to enable him to get rid of all such jurors as he believes to be unjustly biased against him, and who do

not disclose by their own statements their disqualifications.

It is claimed that the examination of several of the jurors disclosed the fact that they had formed opinions with reference to the guilt or innocence of the defendant. The jurors were very artfully interrogated by counsel for the defendant, and some of their answers taken singly would indicate that they entertained disqualifying opinions. The whole examinations, however, have abundantly satisfied us that the court committed no error in overruling the challenges, and that neither one of the jurors entertained such opinion as rendered it necessary or even proper to exclude him from the jury for that reason, nor do we think that there was any error, in view of the difficulty experienced in obtaining a jury, in retaining a man whose hearing was somewhat defective, when it is made clear that he in fact heard all of. the evidence, and that the defendant was not prejudiced by his infirmity.

On the merits of the case, it is contended that there is a failure of proof as to the ownership and identity of the cattle killed. It is shown, we think beyond question, that two at least of the cattle were marked with what is termed a " dewlap brand," and, while the testimony is not very full, we think there is yet sufficient to show that Beaty Bros. owned cattle branded in that manner running in the vicinity of the place where these animals were killed, and that there were no other cattle in that portion of the country branded in the same manner. This proof, taken in connection with all the circumstances developed by the testimony, appears sufficient to warrant the jury in finding that the cattle killed belonged to Beaty Bros.

A portion of the language used in the sixth instruction is criticized, and it is claimed that the court in it assumes that the defendant killed the cattle, or assisted in killing them. If this language were disconnected it would be objectionable; but when read in connection with the balance of the instruction immediately preceding it, it is clear that the court did not assume, and the jury could not have understood it as meaning to assume, that the defendant actually killed or assisted in killing the cattle; but on the contrary they were expressly instructed, that before they could convict the fact must be established that the defendant killed the animals, or participated in the killing of them, or of one of them. The instructions, as a whole, appear to be correct.

We find no error in overruling the motion for a new trial. The statements contained in the affidavits filed appear altogether improbable, and were contradicted by the testimony of the juror whose competency they undertook to impeach. On the whole record, the defendant seems to have had a fair trial.

The judgment is affirmed.

All the Justices concurring.