## No. 11,981.

### WAITE, ET AL. *v.* THE PEOPLE.

Decided January 3, 1928.

Plaintiffs in error were convicted of illegal possession and sale of intoxicating liquors.

### *Affirmed.*

### *On Application for Supersedeas.*

1.   JURY—*Service—Statutory Construction.*   A juror has not "served," as that word is used in C. L. § 5882, unless he has actually sat in the trial of a case.

2.   CRIMINAL LAW—*Intoxicating Liquor—Accessory.*   In an action against husband and wife for illegal sale of intoxicants, there being testimony to the effect that the wife was present when liquor was sold by the husband, and warned purchasers, the evidence being conflicting, it is held that her motion to dismiss was properly overruled.   If the evidence was true, she was an accessory and could be charged and convicted as a principal.

3.       *Misconduct of District Attorney—Instructions.*   Where counsel for defendant objected to statements of the district attorney in his argument to the jury and requested an instruction that they be not considered by the jury, the record being silent on the subject, it will be presumed that the jury was properly instructed.

4.  VERDICT—*Impeachment—Affidavits of Jurors.* Jurors are not permitted to impeach their own verdict by affidavits.

5.  JURY—*Deliberations—Court Authority.* A judge has no authority to summon jurors before him for examination as to what occurred in the jury room touching their deliberations in reaching a verdict.

6.  CRIMINAL LAW—*Verdict—Passion and Prejudice.* In a prosecution for a violation of the prohibition act, the contention that a verdict of guilty was the result of passion or prejudice, overruled.

*Error to the County Court of Otero County, Hon. E. C. Glenn, Judge.*

Mr. E. W. McDANIEL, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. WILLIAM W. GAUNT, Assistant, for the people.

*En Banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE plaintiffs in error, Sam Waite and Enid Waite, husband and wife, hereinafter referred to as defendants, were convicted and sentenced on the three counts of an information charging them with the unlawful possession of intoxicating liquor and with keeping for sale and selling the same. The defendants prosecute error and apply for a supersedeas.

1. The first three assignments of error are based upon the action of the trial court in overruling defendants' challenge for cause to three several jurors, on the ground that the jurors challenged had served within a year on juries in the district or county court, or both. The statute, sec. 5882, C. L. 1921, reads: "That the fact that any person summoned in any way to serve as a juror in any district or county court shall have served as a juror in either of said courts, at any prior term, within one year next preceding, shall be a sufficient excuse for such person from service and may also be ground for challenge for cause to such individual summoned."

The juror Hile, challenged, was summoned to attend as a juror at the January, 1927, term of the district court, but did not sit in the trial of any case. The juror Hood, challenged, was summoned to attend as a juror at the June, 1927, term of the county court, but did not sit in the trial of any case at that term. The juror Raymond Moore, also challenged, was summoned to attend as a juror at the October, 1926, term of the district court, and at the June, 1927, term of the county court, but did not sit in the trial of any case in either court.

Defendants cite *Denver City Tramway Co. v. Kennedy,* 50 Colo. 418, 117 Pac. 167, as sustaining their position, but that case does not decide the question here raised. The court, in that case, did not say what constituted service as a juror. We have not been cited to any decision of this court, nor do we know of any, where the precise question here presented has been passed upon.

In Kansas, where a similar statute was under consideration, the Supreme Court of that state held that the juror must have actually served—must have sat as such in the trial of a case. *State v. Lowe,* 56 Kas. 594, 597, 44 Pac. 20.

In Missouri, the statute of that state provided that "No petit juror shall be permitted to serve on such jury for more than one week consecutively during any term of court." The Supreme Court of Missouri held that the statute limited the right of challenge to the time of actual service of the juror, and not to the period of his attendance upon the court under the venire. *State v. Rose,* 271 Mo. 17, 22, 195 S. W. 1013.

The same construction was placed upon a similar statute in Oklahoma. *Stuard v. State,* 6 Okl. Crim. 94, 96, 116 Pac. 204.

In *State v. Rose, supra,* the court cited *State v. Thorne,* 81 N. C. 555, 558, in which the North Carolina court said, "The disqualification attaches to the juror who 'has acted' or served as such, and not to one who has been at the court under a summons, liable only to be called on for such service." The ruling there made was

subsequently cited with approval by the same court in *State v. Whitfield,* 92 N. C. 831.

The only authority holding to the contrary, so far as we know, is *People v. Estes,* 303 Ill. 602, 136 N. E. 459, wherein the Supreme Court of that state said, "We may further add that a juror who has been in attendance the full two weeks during the trial of cases completes his statutory service of two weeks although he may have been rejected on every case wherein he was tendered as a juror."

Our statute expressly makes a distinction between a person "summoned in any way to serve as a juror," and one who "shall have served as a juror." The juror may be summoned to serve, but he may not actually serve, i. e., may not actually sit in the trial of any case, and unless he has actually done so, he has not served. The challenges were properly overruled.

2. The next assignment of error is that the court should have sustained defendants' motion to dismiss the case as to Enid Waite. We do not perceive any reason why this motion should have been sustained. The defense was an alibi, and also that they had neither in their possession nor sold any intoxicating liquors. The evidence was conflicting. There was much testimony to the effect that Mrs. Waite was present with her husband when the liquor was sold and paid for, and that she, at the time, warned the purchasers to beware of the bridge, as that was a bad place to be found with intoxicating liquors in their possession. If that evidence was true she was an accessory and could be charged, and convicted, as a principal. The evidence being conflicting, the court was right in overruling the motion to dismiss and in submitting the case to the jury.

3. The defendants assign as error that the trial court erred in not instructing the jury to disregard certain alleged misconduct of the deputy district attorney, and certain alleged improper statements made by him to the jury, during the closing argument. The record shows

the following: "Mr. Allen summed up the case in rebuttal, during the course of which he pointed to People's Exhibit 'A,' stating: 'You heard George Wells testify here, and noticed the condition he was in: The loss of that arm is the result of drinking that stuff.' (Indicating People's Exhibit 'A.')   (By Mr. McDaniel) I object seriously to this argument of counsel; there was not a word of testimony in the case to that effect, and that is absolutely prejudicial, and I ask the court to instruct the jury not to consider what counsel has said."

It does not appear that the court ruled upon the request at that time, and no exception was saved. Whether the court later instructed the jury as defendant requested, we do not know, as the court's instructions are not contained in the record. The presumption is that the jury was properly instructed.

4. A further contention of defendants is that the court erred in not granting them a new trial because of alleged misconduct of the jury in the jury room, while deliberating upon their verdict. Defendants claim that the verdict of guilty was reached by reason of statements made by certain jurors, attacking the reputation, for truth and veracity of one of defendants' witnesses. This claim was supported by the affidavit of Mr. McDaniel, defendants' attorney, in which he states that the affidavit is made upon information and belief, the information having been obtained from conversations with some of the jurors who refused to make affidavits concerning what occurred in the jury room. The trial court refused the request of defendants, that the jurors be brought in for examination upon the hearing of the motion for new trial.

Manifestly the action of the court was right. Jurors are not permitted to impeach their own verdict by affidavits. *Johnson v. People,* 33 Colo. 224, 242, 80 Pac. 133, 108 Am. St. Rep. 85; *Heller v. People,* 22 Colo. 11, 19, 43 Pac. 124; *Baxter v. Beckwith,* 25 Colo. App. 322, 324, 137 Pac. 901.

If the affidavits of jurors are not admissible to impeach their verdict, it necessarily follows that the court had no authority to summon the jurors before him for examination as to what occurred in the jury room.

5. There is nothing disclosed in the record to support the contention that the verdict of the jury was the result of passion or prejudice. There appearing no error in the record, the supersedeas is denied and the judgment affirmed.

MR. JUSTICE BUTLER concurring specially.

I concur in the affirmance of the judgment; but with that part of the opinion construing section 5882, C. L., to mean that a juror does not serve as a juror unless he actually sits in the trial of a case, I do not agree. Such a construction, in my opinion, is unwarranted, and is unjust to jurors and litigants alike. The jurors in question not only had been summoned, but had been in actual attendance upon the court during previous terms within the year.

The section in question was intended to serve two purposes; to relieve persons from excessive jury service, and to exclude professional jurors. *Atlanta, etc., Ry. v. Ray,* 70 Ga. 674; *Bissell v. Ryan,* 23 Ill. 566 (opinion by Breese, J.); *Burden v. People,* 26 Mich. 162 (opinion by Cooley, J.). The provision should be construed liberally so as to carry out its purposes. *Atlanta, etc., Ry. v. Ray, supra; Burden v. People, supra; Bissell v. Ryan, supra.*

The construction given by the majority of the court in the present case falls far short of carrying out the purposes of the section. Under such a construction, a farmer may be summoned from a place many miles from the county seat, and required to be in attendance upon the court from day to day for many days, his farming operations and his stock meanwhile suffering because of his forced absence; and if he has not actually sat in the trial of a case, he may be summoned and required to leave his farm and stock and be in attendance during the next term

of court; and if he does not actually sit in the trial of a case during that term, he may be summoned and compelled to attend during the third term. It will not do to say that the judge, no doubt, would excuse the juror, if made aware of his plight. The juror should not be required to solicit relief as a favor or as a matter of judicial discretion. In my opinion, he can demand it as a statutory right. Of jurors who, in obedience to a summons, attend court from day to day, waiting to be called into the jury box, it may be said that, in a very real sense, "They also serve who only stand and wait."

Now as to the other purpose. Professional jurors have been from time immemorial a menace to the administration of justice. No less an authority than Mr. Justice Cooley described them as "persons who, from a disinclination to steady employment, and sometimes from more reprehensible motives, either through the favor of officers or by solicitation, succeeded in being summoned to an important duty, the responsibilities of which they did not feel, and the trust imposed, it was sometimes their purpose to abuse." *Burden v. People,* 26 Mich. 162. Mr. Justice Breese, of the supreme court of Illinois, pays his respects to that class of undesirables in these words: "There had grown up, in our State, a formidable corps of professional jurors; persons who, having no honest means of livelihood, or not resorting to them, if they had, were found, at every term, hanging about the courthouses, importuning the sheriffs and their deputies, and seizing every occasion to be put upon the juries—making their living, in fact, by jury service. If they could not get upon the petit jury, they were content to serve on the grand jury, as the pay was the same; one or the other jury, they would contrive to get on. This disgusting and disreputable eagerness to be upon juries, occurred at every term." *Bissell v. Ryan,* 23 Ill. 566. Under the provision of the statute, as construed in the majority opinion, it would be possible—highly probable, in fact —for a professional juror to serve on the jury for three

successive terms, if during the first and the second terms he is prevented by peremptory challenges from sitting in the trial of a case. This would compel defendants in criminal cases to use upon the professional juror a peremptory challenge that they may desire to use upon some other juror objectionable to them, thereby depriving such defendants of a valuable right. If several professionals were called into the jury box at the same time, the injustice would be intolerable; and yet this may result because of the decision in this case.

A construction that makes such results probable, or even possible, is not, I submit, a reasonable construction. Nothing in the wording of the section compels or justifies such a construction.

What is the plain common sense of the matter? Common sense and the courts are not strangers; indeed, the relations between them usually are, and always should be, intimate and cordial. A man on a farm tells his employer that the former has been summoned to the county seat, and will be serving as a juror for about ten days. What does he mean? He means, and his employer understands him to mean, that he will attend court as a juror for about ten days, not that he will be in attendance for two or three weeks, during which time he may sit in several trials, consuming ten days in the aggregate. A person, asked how long a man may be required to serve on the jury in one year, answers, "Two weeks." He means two weeks' attendance, of course. No one would suppose that he means anything else. In the present case, the transcript of the record shows what the juror understands by the expression, "serving on the jury." Hile, one of the jurors, was examined on his voir dire. Asked whether he served as a juror within the past year, he answered, "It seems to me I did." He was asked, "As a matter of fact, Mr. Hile, you served as a juror in the January term of the district court here, did you not?" He answered, "I believe I did; I don't fully recall, but I believe I did." He was asked, "Did you sit on the trial

of any case, Mr. Hile?'' He answered, ''No. Q. You are positive of that? A. Yes, sir.''

In *Denver City Tramway Co. v. Kennedy,* 50 Colo. 418, 117 Pac. 167, we held that under the act of 1905 (S. L., chap. 116), it is ground of challenge to one called as a juror that he has served in that capacity at any prior term of the same court, within one year preceding, regardless of how short a period he served. By the words, ''regardless of how short a period'' he served, we clearly indicated that by service we meant attendance upon the court. If by service we meant sitting in the trial of cases, other words would have been used, e. g., ''regardless of how few the trials in which he sat as a juror.'' And when, at page 419, we said that the juror ''was again summoned for duty on April 17th, 1907, and had *served* continuously from said last mentioned date up to and including the time of the trial of this cause, which took place on the 14th of May, 1907,'' we did not mean that he was continuously engaged in trials of cases, but that he was in attendance every day. In the transcript of the record in that case is the following: Juror Black, being examined on his voir dire, was asked when he last served on a jury. He answered, ''Over a year ago.  *  *  * About a year ago.'' Mr. Robertson offered to produce the jury book to show that it was less than a year. To which Mr. Nye responded, ''We will take your word for it.'' Thereupon the following stipulation was made: ''It is hereby stipulated by counsel for the respective parties hereto that the jury record, kept by the clerk of the district court of the City and County of Denver, shows that the juror Robert Black was summoned for jury service on, to-wit, the 19th day of April, A. D. 1906, and served for a period of seven or eight days; said record further shows that the said juror Robert Black was again summoned for jury duty on the 17th day of April, A. D. 1907, and served continuously from said last mentioned date up to, and is serving at the present time.''

All who are familiar with the jury book of the Denver district court know that it does not refer to jury trials, but merely records the daily attendance of the jurors, so that the amount of their fees may be computed. Another case, *Dill v. People,* 19 Colo. 469, 36 Pac. 229, 41 Am. St. Rep. 254, had to do with the challenging of jurors because of prior service. The proceedings, as disclosed by the transcript of the record, show clearly that what we meant by the service of jurors is their attendance upon the court, regardless of whether or not they sit in the trial of a case. For example, juror Moore was being examined on his voir dire. "Q. Have you served on a jury within this county within the last year, prior to this term of court? A. Yes, sir. * * * Q. How long did you serve? A. One term." Another juror said he had served about a month; and a third said he had served twenty-six days. The supposition that they were sitting in the trials of cases all that time cannot be entertained.

The legislature has not left us in doubt as to what it means when it uses the words "jury service." Section 9 of the act of 1911 (C. L., sec. 5859), relating to juries in counties with a population of more than 100,000, provides that, "The term of jury service shall be two calendar weeks, and a person who has actually been in attendance as a juror in a court of record * * * for two complete calendar weeks shall be discharged by the court; * * *." Can anything be plainer than this? Six years later the legislature used the same language in an act concerning jurors in counties with a population of more than 40,000 and less than 100,000; the term of service, however, being three weeks, instead of two. S. L. of 1917, p. 339, sec. 11; C. L., sec. 5875. And again, in 1923 (S. L. 1923, p. 402), the legislature repeated the same words in an act amending the act of 1917, supra, changing the term of service to four weeks.

In the majority opinion, the court says: "Our statute expressly makes a distinction between a person 'summoned in any way to serve as a juror,' and one who

'shall have served as a juror.' The juror may be summoned to serve but he may not actually serve, * * *." True, there is such a distinction. When a man is summoned, he may take one of two courses. He may ask to be excused from jury service; in which event, if the court excuses him, he does not serve, but if the court does not excuse him, he does serve. Or he may conclude to serve without asking to be excused; in which event, of course, he serves.

In the majority opinion, it is conceded that the holding in *People v. Estes,* 303 Ill. 602, 136 N. E. 459 (decided in 1922), is contrary to the holding in the majority opinion; so that case will be passed without discussion. The following quotation from the opinion (p. 611) will suffice: "We may further add that a juror who has been in attendance the full two weeks during the trial of cases completes his statutory service of two weeks, although he may have been rejected on every case wherein he was tendered as a juror."

In Illinois, at one time, it evidently was the practice to administer an oath to jurors summoned and in attendance. A statute provided as follows: "That, hereafter, it shall be sufficient cause of challenge to any juror called to be sworn in any cause, that he has been sworn as a juror, at any term of court held within a year prior to the time of such challenge." The court, per Mr. Justice Breese, said: "This is a sweeping exclusion. Having been sworn as a juror—not in a cause, but 'sworn as a juror at a term,' is the point of the exclusion. The act intended to break up the profession [i. e., of professional jurors], and we will aid the law by giving it the most liberal construction to effect that end." *Bissell v. Ryan,* 23 Ill. 566.

In Massachusetts, a statute declared that "no person shall serve as a traverse juror * * * more than thirty days at any one term. * * * In *Provident Inst., etc., v. Burnham,* 128 Mass. 458 (decided in 1880),

it was said, per Mr. Justice Gray: "The 'thirty days' here intended are manifestly days on which the court is in session, and on which jurors may be called upon to serve."

In *State v. Lowe*, 56 Kan. 594, 44 Pac. 20, cited in the majority opinion, there are expressions that seem to support that opinion; but this quotation from the syllabus is worth noting: "Where it appeared that he [the juror] was merely summoned on the regular panel at a preceding term of the court, but that he was discharged on the *first day* of his attendance because there were no jury cases to try, the challenge was properly overruled."

*State v. Rose*, 271 Mo. 17, 195 S. W. 1013, is cited in the majority opinion. The statute forbids service "for more than one week consecutively during any term of court." There was a challenge to the array. The jurors had served but two days as jurors the week preceding the trial, and were in attendance two days during the week of the trial. The court cited *State v. Thorne*, 81 N. C. loc. cit. 558, which it is said was cited with approval in *State v. Brittain*, 89 N. C. 481, and in another case. So far as the Brittain case is concerned, this is a mistake; it does not cite the Thorne case, nor does it touch the point involved. The Missouri court also cites *Humphrey v. State*, 74 Ark. 554, 86 S. W. 431, as sustaining its holding. The Arkansas statute limits the term of service of jurors to four weeks, and provides that no person serving for such time shall be eligible for further service during that term or the next succeeding term. The jurors were summoned to attend on September 19th, but on that day were excused until October 3. On October 8 the court adjourned until October 24. On November 9 the Humphrey case was called for trial. It was held that the jurors had not served four weeks, and therefore were eligible. That case not only does not support the Missouri case, or the majority opinion in the present case, but is opposed thereto, and is in harmony with the views expressed in this concurring opinion. The opinion in the Missouri

case also cites *State v. Lowe,* 56 Kan. 594, 44 Pac. 20, already referred to, and *State v. Whitfield,* 92 N. C. 831, which will be referred to later.

The next case cited in the majority opinion is *Stuard v. State,* 6 Okl. Cr. 94, 116 Pac. 204, a case similar to the Arkansas case. The opinion cites the Arkansas case, and, like it, is opposed to the majority opinion here, and supports this opinion. The service there considered was merely attendance, which, however, did not in fact continue for the statutory period of two weeks.

The next case relied upon to sustain the majority opinion is *State v. Thorne,* 81 N. C. 555, decided in 1879. The statute made it a cause for challenge that a juror has "*acted* in the same court as a grand or petty juror within two years next preceding such term of the court." From the statement of the case (p. 556), it appears that within the two years the juror had been summoned on a "special venire issued in a case of felony then pending"; but that "a jury being had before his name was drawn, he did not serve thereon." It was held that he had not "acted" or served as a juror, the court saying (p. 558) that "his name was not drawn, and a jury being obtained without him, he was discharged."

The last case cited is *State v. Whitfield,* 92 N. C. 831. It is not in point. The statute permitted a challenge for cause of any "*tales juror*" who has acted in the same court as a juror within the preceding two years. The jurors challenged "were not *tales jurors,* but of a special venire.   *   *   *   They were different in their type from talesmen," said the court, "and the statute cited makes a distinction between the two classes. They did not come within the terms of the proviso quoted above, nor within the mischief to be remedied by it." The court then adds this dictum: "But if they had been talesmen, this objection was not good, because it did not appear that they had acted as jurors within two years. To render them disqualified they must have acted within that time." It

does not appear what the jurors did or did not do within the two years; hence, whether the court meant that the jurors, though in attendance, had not actually sat in the trial of a case, or meant that the jurors had not been in attendance within the two years, we are not advised.

The trial court erred in overruling the challenges for cause. Should the judgment be reversed for that error? In my opinion, it should not. The three jurors were peremptorily challenged by the defendant, so that none of them sat in the trial of the case. Where a defendant has not exhausted his peremptory challenges, the error of the court in wrongfully overruling his challenge of a juror for cause will not reverse the judgment; the reason being that his substantial rights have not been prejudiced by the erroneous ruling. So, also, if he has exhausted his peremptory challenges (as in the present case), but is not dissatisfied with any of the remaining jurors, and would not have exercised another peremptory challenge, if he had one, it would be trifling with justice to hold that his substantial rights have been prejudiced, and reverse the judgment. If, by the erroneous overruling of a challenge of a juror for cause, a defendant has been compelled to exercise upon such juror a peremptory challenge that otherwise he would have used to get rid of another juror, and by reason thereof the other juror whom he desired to peremptorily challenge sits in the trial of the case, the defendant's substantial rights have been prejudiced; otherwise, they have not been prejudiced. These matters must be made to appear in the record by a statement to the trial court, or in some other appropriate manner. Nothing of the kind appears in the record in this case. Our legislature repeatedly has endeavored to make it plain that, in both civil and criminal procedure, substance, not form, is the controlling consideration. C. L., sec. 7103; Code of Civil Procedure, secs. 84, 479; also secs. 41, 83, 157, 418, 478. I am aware of the opinion in *Denver City Tramway Co. v. Kennedy*, 50 Colo. 418, 117 Pac. 167.

This exact point was not there considered, though there are expressions in that opinion that are not in harmony with these views.

It does not appear that by the error of the trial court the defendant's substantial rights were prejudiced in the slightest degree. *Stroud v. United States,* 251 U. S. 15, 40 Sup. Ct. 50, 64 L. Ed. 103. Therefore, I concur in the affirmance of the judgment.

MR. JUSTICE DENISON authorizes me to say that he concurs in this opinion.