IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1901.

---

KNIGHTS OF PYTHIAS *v.* STEELE.

(*Jackson.* April 20, 1901.)

1 CHARGE OF COURT. *Erroneous as to preponderance of evidence.*

In civil cases a mere preponderance of evidence in favor of the party upon whom the burden of proof rests is sufficient to entitle him to recover, and an instruction to the jury is erroneous, as requiring more than a preponderance, which is in these words: "A witness is only valuable to the extent that his evidence establishes some material fact or circumstance which aids in making clear and plain to your minds some question involved in this litigation." (*Post, pp. 4, 5.*)

Cases cited: Gage *v.* Railroad, 88 Tenn., 724; McBee *v.* Bowman, 89 Tenn., 132.

23 P—1

. Knights of Pythias *v.* Steele.

2. SAME. *Same.*

An instruction to the jury, in an action on a life policy to which the defense of suicide is interposed, is erroneous, as requiring more than a preponderance of the evidence, which states that "the burden of proof is on the defendant to establish to the satisfaction of the jury, by a preponderance of the evidence," that the insured committed suicide. It is not essential, in a civil case, that facts shall be "established"—that is, "settled certainly," or "fixed permanently." Nor is it essential that the evidence shall "satisfy" the minds of the jury—that is, set their minds at rest and free them from doubt, suspense, and uncertainty. (*Post, pp. 6–13.*)

3. NEW TRIAL. *Granted for incompetency of juror, when.*

The fact that a juror falsely stated, on his *voire dire* examination, that he had not served on the regular panel within the last two years, and thereby deceived counsel and prevented his challenge for cause, is a sufficient ground for setting aside a verdict and granting a new trial, especially where this fact is fortified by such conduct of the jury, on and after the trial, as indicated that they were not fair and impartial. (*Post, pp. 13–15.*)

Constitution construed: Article I., Section 6.

Case cited: Neely *v.* State, 4 Bax., 180.

FROM   SHELBY.

Appeal in error from the Circuit Court of Shelby County. L. H. ESTES, J.

F. P. POSTON for Knights of Pythias.

GREER & GREER for Steele.

WILKES, J.   This is a suit against the Endowment Rank of the Order of Knights of Pythias

to recover $3,000, the amount of a benefit certificate in the fourth class upon the life of J. K. Steele, payable to his wife as beneficiary.

The application contains the clauses usual in such certificates, to wit: that the assured would punctually pay all dues and assessments and be governed and controlled by all the rules, laws and regulations of the order governing the ranks then in force or that might afterwards be enacted, or submit to the penalty therein contained, and any violation of the conditions and requirements of the laws governing the rank should render the certificate and all claims under it void, and the order should not be liable for the sum named in the certificate nor any part of the same.

The order had, at the time this certificate matured, a by-law or regulation as follows:

"If the death of any member heretofore admitted shall result from suicide, whether voluntary or involuntary, or whether such member shall be sane or insane, or if such death shall be caused or superinduced by the use of liquors or narcotics or opiates, then the amount to be paid upon such member's certificate shall be a sum only in proportion to the whole amount as the matured expectancy is to the entire expectancy at the date of admission; the expectancy of life based upon the American Experience Table of Mortality in force at the time of death to govern."

It is conceded that this by-law is binding upon the beneficiary under said certificate.

The order, by its plea, averred that Steele's death was brought about by himself by an act of self-destruction or suicide, or was caused or superinduced by the use of liquors, narcotics or opiates within the meaning and terms of the by-law, and it was therefore under obligation to pay no more than the *pro rata* provided in the by-law of $780.12, and this it was willing, and offered, to pay.

There have been three trials of the case before juries. The first trial resulted in a verdict of $3,000. The Court suggested a remittitur to $780.12, and on that being declined set aside the verdict and awarded a new trial.

The second trial resulted in a verdict for the same amount, and upon it judgment was rendered, and, a new trial having been refused, an appeal was taken to this Court and the judgment of the Court below was reversed at the April Term, 1900, and a new trial awarded.

This reversal was upon an error in the charge of the Court. The third or present verdict was for $3,000, and upon it judgment has been rendered and an appeal prayed.

It is said the trial Judge erred in his charge to the jury when he told them:

"A witness is only valuable to the extent that his evidence establishes some material fact or cir-

cumstance which aids in making clear and plain to your minds some question involved in this litigation."

Criticism is made of several expressions used in this charge and that as a whole the rule is stated too rigorously. It is said that in civil cases a litigant cannot be required to establish any material fact or circumstance, but it is sufficient if the evidence preponderates in favor of or against such fact, and that evidence may be valuable which aids to make this preponderance, although the fact may not be made clear and plain; that it is not incumbent on a litigant in civil cases to make the questions involved in the litigation clear and plain, but it is sufficient if the evidence preponderates in favor of the view of either party, although it may not establish any material fact or circumstance and although the questions involved may not be made clear and plain.

In the case of *Gage* v. *Railroad*, 4 Pick., 724, it was said, criticizing and correcting the charge of the Court below: "It is sufficient in civil cases if, after weighing the evidence on both sides, a preponderance is the one way or the other. The burden is on the plaintiff to make out his case, and he is only required to do so by a preponderance, but when he has done so he is entitled to recover."

In *McBee* v. *Bowman,* 5 Pick., 132, there was

a contest over a will, the defense being that the will was a forgery. The Court below, in speaking as to this defense said, among other things: "It should appear with reasonable certainty that such is the case." This Court in commenting on that expression said: "To our minds the whole instruction means, and was intended to mean, that to establish a charge of forgery, it was incumbent on McBee to show the fact by that degree of preponderance or weight of testimony necessary to produce conviction of its existence with reasonable certainty. The instruction is manifestly erroneous. Reasonable certainty implies the absence of reasonable doubt. Telling a jury that they must be convinced of a fact with reasonable certainty is almost, if not quite, the same as telling them they must be convinced of it beyond a reasonable doubt. In civil cases preponderance is all that is required."

The third and fifth assignments are in substance the same as the second above set out, that is, they question the quantum of evidence required by the Circuit Judge to establish the defense that the insured committtted suicide.

The specific charges complained of are as follows:

"3.  Such is the love of life that the law presumes no man will commit suicide or intentionally kill himself, therefore the burden of proof is on the defendant to establish to the satisfaction

of the jury by a preponderance of the evidence that J. K. Steele did intentionally take a dose of morphine or other narcotic and that it produced death.

"5. If the facts and circumstances as proven in this case, establish the fact to the satisfaction of the jury that said Steele did use opiates and narcotics, but the same were not used with the intention and purpose of producing death, then the establishing of such facts would meet the requirement of the law."

We think the criticism of these portions of the charge is in the main correct.

The meaning of the word "establish," as applied to the quantum of evidence, is to settle certainly or fix permanently what was before uncertain, doubtful or disputed. 11 Am. Enc. of Law (2d Ed.), 353. It is a term much more appropriate for criminal than civil cases, but even in criminal cases the facts do not have to be established so as to settle them certainly and leave no ground for dispute, but only beyond a reasonable doubt.

In the case of *Eberhardt* v. *Sanger,* 51 Wisconsin, 79, the issue was to be proven, if at all, by circumstantial evidence. The Court said: "The use of the word 'establish' in the charge seems to have been specially unfortunate. The word ordinarily means to settle finally, to fix unalterably, and in this sense the instruction given would

be equivalent to saying that the facts recited were not conclusive evidence of fraud. In this sense it was peculiarly inapplicable.

It was unnecessary for the plaintiff to furnish conclusive evidence, and yet from the instruction the jury might well infer that it was essential for him to do so. The question is, whether these instructions, given as they were without qualification, did not tend to mislead the jury.

We are clearly of opinion while the collateral facts and circumstances recited in each might not of themselves establish fraud, yet it is quite evident they tended more or less to prove fraud, and it seems to us that the instructions should have been differently worded, or that there should have been some qualification either as to each of said instructions or generally as to all." See, also, 11 Am. & Eng. Enc. of Law (2d Ed.), 357, note.

It is not necessary in a civil action that any fact should be "established," that is, "settled certainly" or "fixed permanently," which may have been uncertain, doubtful or disputed theretofore. It is not required that the evidence shall be clear and plain or that it shall satisfy any reasonable man. The word "satisfy" means "to free from doubt," "suspense," or "uncertainty," "to set the mind at rest."

Now, it is necessary that the jury should be satisfied that there is a preponderance one way or

the other, but this does not mean that it must be satisfied of the truth of the fact itself.

Mr. Greenleaf, in his work on Evidence, section 2, volume I., says: "By satisfactory evidence, which is sometimes called sufficient evidence, is intended that amount of proof which will ordinarily satisfy an unprejudiced mind beyond a reasonable doubt."

The law does not require that any theory or contention of either party in a civil suit shall be freed from doubt, suspense or uncertainty, that the evidence must set the minds of the jury at rest, that it must be clear and plain, that it must be established in the usual acceptation of that term, but merely that the contention shall be supported and made out by a preponderance of the testimony, although the jury may nevertheless have some doubt or uncertainty and their minds may not be at rest, and that the fact may not be certainly fixed. A jury may consider that a fact is shown by a preponderance of the testimony when it falls short of making it clear and plain or removing doubt from their minds, but the rule is if the evidence is of sufficient weight to preponderate in favor of any theory or contention, that in a civil case is sufficient. Now, the several charges in the case complained of clearly lay down the rule that the evidence in the case must be of such a character or so clear and

plain as to satisfy any reasonable man, and remove doubt from the minds of the jury.

The true statement of the rule is that if the evidence preponderate in favor of any contention of the plaintiff or defendant, that contention may by the jury be considered as sufficiently sustained to rest a verdict upon, and it is not necessary that the evidence should go so far as to make said contention clear and plain or establish it in a sense to make it free from doubt or uncertainty or set the minds of the jury at rest and convince them absolutely of the truth of the contention. After all the evidence that can be produced is introduced, the jury may still be unsatisfied—not convinced, their minds may not be at rest, they may not be freed from doubt, uncertainty and suspense, but still the jury may recognize that there is a preponderance of evidence, and on that they may base their verdict.

The trial Judge modified the language contained in the fourth assignment by adding, after giving the rule as we think too strongly, as follows: "Whenever the defendant has produced evidence which preponderates in favor of the view that said Steele did take narcotics or opiates with the intention of producing death, and you find that same did produce death, then it has met the requirement of the law as applied to the cases of persons who unintentionally commit suicide, and

in such case your verdict will be for the defendant."

This latter statement is correct law, but it is only used in connection with the improper language in the fourth assignment, and not with reference to the other expression complained of.

This feature of the charge is very important under the facts of the case. No one was present when the assured died. There is nothing to show how he came to his death but circumstances. These are regarded in contrary lights by several witnesses. There was no conclusive evidence how the death was caused—no theory that would be free from some doubt or admit of no different views or conclusions. The minds of the jury could probably not rest entirely at ease upon either theory advanced; at most they could only weigh the evidence and determine where the preponderance lay and give a verdict accordingly.

We are of opinion, therefore, that there is error in the charge of the Court as assigned, and for this the judgment must be reversed and the cause remanded for a new trial.

There is an assignment that there is no evidence to support the verdict, and as applied to the facts of this case it means that the defense of suicide is made out.

Now, under the rule applied in this Court, there is undoubtedly some evidence that death was not caused by suicide, but this Court cannot weigh

the evidence and say that it preponderates in favor of or against this proposition. Nor, under the charge of the Court below, could the jury base their verdict upon a mere preponderance of the evidence. The jury may have believed that the preponderance was in favor of the theory of suicide, but unless they were satisfied of it and found it plain and clear and established to their satisfaction, they could not find for the defense set up under the charge as given. It is not sufficient answer to this to say that the rule applies to both sides alike. In a certain sense it does so apply, but in a practical sense it bears in each case upon the party upon whom the burden of proof rests, and in this case it rested on the defendant to prove the suicide. Now, this it should have been required only to show by a preponderance of evidence.

It is true that in the early part of his charge the trial Judge said: "Under these pleadings the burden of proof is on the plaintiff to establish to the satisfaction of the jury by a preponderance of the evidence, every material point in her case," but while this instruction is approximately correct, though not literally so, in its use of the word "satisfaction" the charges complained of do not follow this instruction nor concur with it, but are a departure from it, and do not leave the jury to understand that it is only necessary to have

a preponderance of evidence to base a verdict upon.

It is assigned as error that the Court below erroneously refused to grant a new trial on the grounds of incompetency and misconduct of the jury. It appears that three of the jurors who sat upon the case, to wit, Munroe, Felts and Flanaghan, had served upon the jury in Shelby County within two years before they were called upon the jury in this case, and were therefore incompetent. It appears that the jury was placed in the box and tendered to the parties in a body. Counsel for the Order, when the jury was thus tendered, asked the question of them collectively if any one of them had served as a juror on a regular panel in any Court in Shelby County within the last two years, and each shook his head.

It appears also that when this jury was made up on the Monday preceding the trial, for service generally in the Court, two of them, Munroe and Flanaghan, were examined separately and individually by the presiding Judge, and each answered that he had not served on any regular jury in the county of Shelby within the two years next preceding. The other juror, Felts, appears not to have been present and was not examined on that occasion, but it is reasonably certain from the record that he was examined when he was afterward chosen, though he states he was not.

We are of the opinion that these jurors were not the good and lawful men to whom the parties were entitled as jurors under Article I., Section 6, of the Constitution. *Neely* v. *The State,* 4 Bax., 180. They were not competent to serve as jurors, and were subject to challenge. Shannon's Code, § 5090.

While it is not a good objection generally, after verdict, that a juror who sat on the case was incompetent *propter defectum,* and it does not matter whether the fact was known to the parties or not, yet this rule proceeds upon the idea that the juror might have been examined before being selected or the parties might have ascertained the fact and excluded such juror by challenge. But in this case the counsel for the company exercised reasonable precaution to ascertain if the jury or any one of them was incompetent by inquiring of the jurors themselves, and had the assurance of competency, from the presumption that the trial Judge examined them upon that point when they were placed on the regular jury, and the actual fact of a second examination by himself. The jurors explained that they were mistaken about the time when they served, and did not intend to state a falsehood or mislead. However this may have been, the fact of incompetency existed, and counsel for the company was misled and deceived, after taking proper precautions to ascertain the fact, and by the jurors

themselves while either actually or virtually under oath, and it was not simply a case of want of knowledge of incompetency nor a waiver of incompetency, with or without knowledge of its existence, in which case the exception being *propter defectum*, must be considered as waived; but it is a case where the exception was reasonably made, or would have been made but for the incorrect or false statements of the jurors, which misled the defendant's counsel and influenced his action. It is true counsel might have examined the jury books of the Court, and such other Courts in Shelby County as had jurors, but this would have been an extraordinary precaution, which would have consumed time and delayed the Court, and he could not be required so to do.

The demeanor of some of the jury leads to the belief that they, or some of them, were anxious to sit upon the case, and their subsequent conduct, in drinking, after the verdict, with the brother of plaintiff, who was managing the case, makes it more than doubtful whether these jurors were such fair and impartial persons as the parties had a right to demand, and upon this ground, also, the judgment of the Court below must be reversed.

It is not necessary to pass upon the other assignments.

The judgment of the Court below is reversed, and the cause remanded, and appellee will pay costs of appeal.