## No. 15,411.

### HARRIS *v.* THE PEOPLE

(160 P. [2d] 372)

Decided June 4, 1945. Rehearing denied July 2, 1945.

512

Mr. GEORGE M. GIBSON, for plaintiff in error.

Mr. GAIL L. IRELAND, Attorney General, Mr. H. LAW-
RENCE HINKLEY, Deputy, Mr. JAMES S. HENDERSON, As-
sistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defend-
ant, was convicted of statutory rape and received a sen-
tence of from ten to twenty years in the penitentiary.
To review that judgment he prosecutes this writ and
assigns nine alleged errors which may thus be sum-
marized: 1. Challenge to the array should have been
sustained; 2. the jury was professional and prejudiced;
3. examination of defendant was improperly limited; 4.
cross-examination of defendant's wife was improperly
limited; 5. defendant's instruction No. 1 should have
been given; 6. the court's instruction No. 7 should have
been refused; 7. the district attorney indulged in an im-
proper and prejudicial argument; 8. the verdict was un-

514

supported by the evidence; 9. the juror Nelson was disqualified by statute.

The offense charged was committed October 12, 1942, the information was filed November 10 following, and upon a showing of defendant's indigence counsel here appearing was appointed to represent him. November 16, 1942, defendant was arraigned, pleaded not guilty and not guilty by reason of insanity, and was committed to the state hospital at Pueblo for thirty day's observation, two physicians being designated to examine him and report. April 12, 1943 the regular panel being exhausted, a special venire for twenty jurors was issued and served as ordered. April 19 following, the venire was filed and from the twenty so summoned the jury was thereafter selected. The case was thereupon set for trial April 28. On that day the information was amended as per notice previously given. Defendant withdrew his plea of insanity and moved to quash the panel. That motion was overruled and the cause proceeded to trial. The following day the trial was completed, the jury instructed, the cause argued, and the jurors retired and returned with a verdict of guilty. May 24 following, defendant's motion for a new trial was filed with supporting affidavits. June 1, the motion was argued and taken under advisement, and one week later it was denied and defendant sentenced. At the same time the trial judge made and entered findings of fact relative to various jurors.

Defendant was a married man living with his wife and four small children, the eldest being a daughter eleven years old. It was charged, and the state's evidence showed, that the offense was committed with this little girl—not once, but repeatedly—and that discovery occurred because he had infected her with gonorrhea from which disease he admitted he was suffering.

1. The panel was challenged because its members had been summoned on open venire. The statutory procedure governing the selection of jurors is to be

found in chapter 95, '35 C.S.A. However, section 45 thereof reads: "Nothing in this subdivision contained shall be held to deprive any court of the power to cause a jury to be summoned by open venire as is provided by law." Sections 14 and 17, id., contain further provisions relating thereto. Following these, numerous cases in this jurisdiction are cited which need not here be repeated. Therefrom it appears that the procedure herein followed was in all respects regular and has been repeatedly approved by this court. Nothing further need be added. The assignment is unsupported.

2. It is contended that some of these jurors were "professional" and that the presumption should be indulged that they were prejudiced. Such information as we have on this subject is obtained from the affidavits filed in support of the motion for a new trial, from those filed in opposition thereto, and from the findings of the court above referred to. Taken together they wholly fail to support the assignment. Much of the information contained in the supporting affidavits is immaterial, i. e., that some of the jurors had served once or more within a given period prior to the year prescribed by the statute, that some of the jurors had served within that period and were excused for cause; that one juror summoned was a deputy sheriff and was excused peremptorily; that one juror who served was a gunsmith frequently employed by the police officers; etc. There is no suggestion that counsel for defendant made an inquiry, on voir dire, of any of the jurors as to service in other cases, save by the general question as to whether they had served within one year. Had he been seriously concerned further inquiry would have disclosed the facts and objectionable jurors could have been disposed of by unused peremptory challenges. Add to the foregoing that it does not appear that defendant was prejudiced, and that all these matters rested in the sound discretion of the trial judge, and we are

516

forced to the conclusion that this assignment is without merit.

3. Complaint is made because counsel for defendant was not permitted to interrogate him as to what intercourse, if any, he had indulged in during a given period with anyone other than his wife. This for the alleged purpose of disclosing the source of his infection. The court was not concerned, nor are we, with the source of defendant's infection. The only proper inquiry was as to the source of infection of the prosecuting witness.

4. Defendant's wife was called as a witness for the state and on cross-examination his counsel sought to interrogate her as to her own personal misconduct with other men. The subject was entirely unrelated to any issue in the case and wholly unconnected with the credibility of the witness. Objections thereto were properly sustained. Moreover, it appears that the information sought, so far as it could be said to pertain to any proper inquiry, was given. Otherwise the questions were not specific and the court in sustaining the objections gave leave to counsel to recall the witness for further cross-examination if he so desired. No possible prejudice appears.

5. Defendant requested the giving of his instruction No. 1 which was refused. It related to alleged contradictory statements made by a witness. In lieu thereof the court gave instruction No. 7 on the same subject and in substance identical, hence no error appears.

6. Instruction No. 7 contains nothing not covered by defendant's request above mentioned and fairly states the law. It was properly given.

7. Our knowledge of this assignment is gathered solely from the affidavits, since the arguments of counsel do not appear in the transcript. One Bruce, chief of police in Colorado Springs, had testified for the people, and some of his testimony had been contradicted by defendant whose counsel argued that because of the official

position of Bruce, and the large number of cases he handled, his memory should not be trusted, and in answer thereto the district attorney stated, "in effect that said witness was a true, fair man, based upon the experience of the district attorney with said witness." It will be observed that "in effect" destroys any value which this affidavit might otherwise have on the subject. Counsel might at the time have had this portion of the argument taken by the reporter. He did not. As it stands in the record there are four answers to the objection: First, the argument of counsel for defendant was, strictly speaking, improper; second, the statement of the district attorney was a proper answer thereto; third, just what was said and its probable effect upon the jury was for the discretion of the trial court; fourth, the matter seems trivial and without prejudice.

■ 8. The testimony of the prosecuting witness was positive and unequivocal. In material points it is corroborated by other witnesses, particularly by defendant's wife. In some, and especially as to the actual commission of the offense, it is positively contradicted by defendant. The question was solely one for the jurors. They have resolved it and that resolution met the approval of the trial judge as is evidenced by the overruling of a motion for a new trial. The question therefore is not within our province. That there are minor discrepancies in the evidence of some of these witnesses can not be questioned, but they are such as appear in almost every closely contested case, and particularly as to dates and hours and movements of which naturally no records were kept, and doubly so where, as here, the adult witnesses were, to say the least, not above the average of intelligence, and important facts were testified to by others of immature years. The jurors and the judge saw and heard them. They well knew where credence should be given and where withheld. We have no such advantage and must say that the evidence amply supports the verdict.

518

9. We come now to the most important question raised on the motion for a new trial and under the assignments. To some of the Justices, including the writer, it seems simple and the assignment wholly without merit. To others, perhaps better qualified to speak, it appears well supported and absolutely vital. "The fact that any person summoned in any way to serve as a juror in any district or county court shall have served as a juror in either of said courts, at any prior term, within one year next preceding, shall be a sufficient excuse for such person from service, and may also be a ground for challenge for cause to such individual summoned." '35 C.S.A, vol. 3, p. 1116, §53. On voir dire counsel for defendant asked the general question of the jurors (including Nelson) as to whether any of them had so served, and requested if they had to so indicate by raising their hands. At least one juror so indicated and was excused. Another indicated doubt and, upon being checked by the clerk, it was discovered he had not. The juror Nelson gave no indication and was retained and acted as foreman. Thereafter, and prior to the filing of a motion for a new trial, it was discovered that on July 7, 1942, at the May, 1942 term of said court, Nelson had so served and acted as foreman of the jury in a civil case. All this appears from the supporting affidavits of the motion for a new trial. There was also filed the affidavit of Nelson stating that when he was so examined he was "fully convinced in his own mind that he had not served on the jury within the past year." He also stated that he was unacquainted with the defendant, that he knew nothing of the facts, had no desire to serve, and was wholly unbiased and unprejudiced. Motion for a new trial was overruled and this service of Nelson, which it is contended was in violation of said statute, now constitutes the principal reason urged why this court should find prejudicial error and reverse the judgment. If there is a positive statute which compels such a result we are powerless,

but certainly the lawmakers are not, and should amend the act before it again puts the stamp of approval upon such a technical miscarriage of justice. If we have heretofore approved such an interpretation, and now have the power to do so, we should reverse that ruling. If we have not, but other jurisdictions have, we are not bound thereby and should refuse to follow them unless their decisions rest upon the soundest reason. Our position is that there is no such statute, that we have never decided that there is, and that no court has so decided in any case supported by reason. Let us see.

It will be observed that the statute first provides that service within the preceding year "shall be a sufficient excuse for such person from service." By that phrase the juror *may* claim his discharge, or the court in its discretion *may* excuse him. Certainly his service is not forbidden and with that phrase defendant has no concern. The sole remaining provision is that such service "*may* also be the ground for challenge for cause." That phrase does not forbid the juror's service. It may simply be taken advantage of by either party. Here it should constantly be borne in mind that defendant had ten peremptory challenges of which he exercised but four. He could therefore have excused Nelson or any other juror in the box. True, he did not know of Nelson's prior service, but the fact that he used no peremptory challenge on Nelson is proof positive that he had no objection to him but then believed he would make a fair and capable juror, and so far as disclosed by the record he did exactly that. There is no indication that had defendant then known of Nelson's prior service he would have discharged him for cause, otherwise he would have exercised his right to do so without cause. Hence we have this situation: Defendant wished Nelson to serve, and if fully informed he would not have used against him a known statutory cause. Nelson then presumably, and as the trial disclosed, and as the trial judge was convinced, a capable, fair and impartial juror,

became objectionable only when at the close of the trial defendant learned that Nelson had voted for his conviction. Does that call for a reversal? Under a well established rule, unquestioned and constantly followed, it does not unless defendant was prejudiced by the error. That he could not have been we think the foregoing clearly demonstrates.

All authorities uphold the absolute right of a party to the use of all peremptory challenges granted him by statute and hold that any frustration thereof, whether by erroneous ruling, false information, or concealment, constitutes reversible error, because the jury so forced upon the litigant is not a statutory tribunal. These can have no application to a case in which a fair and impartial juror might have been, but need not be, excused for cause, and whom the party complaining did not wish, as in the instant case, to challenge peremptorily. Quite generally courts distinguish between challenges propter affectum, those relating to a juror's bias, prejudice, interest, etc., and challenges propter defectum, those relating to the absence of some purely statutory qualification such as residence, citizenship, property owning, taxpaying, etc.; holding that disregard of the former constitutes reversible error, of the latter not. Also that in case of the former, prejudice to the litigant may be assumed, in the latter, it must be shown. Exceptions to this rule are not wanting, but these rest generally upon special facts and are supported by sound reason. 39 Am. Jur., p. 60, §40; 16 C. J., p. 1162, §2649; 23 C. J. S., p. 1169, §1446; *State v. Patterson,* 183 Wash. 239, 48 P. (2d) 193; *Williams v. United States,* 3 F. (2d) 933; *Leeper v. State,* 29 Tex. App. 63, 14 S. W. 398.

It would be futile to diagnose and distinguish the numerous authorities cited by counsel for defendant in support of his position. Many of them are clearly not in point and others so readily distinguishable as to justify no comment. We take for illustration two on which he most strongly relies: *Denver Tramway Co. v. Ken-*

*nedy,* 50 Colo. 418, 117 Pac. 167; *Endowment Rank of Order of K. P. v. Steele,* 107 Tenn. 1, 63 S. W. 1126. In the Denver Tramway case the juror Black was challenged peremptorily and defendant used all his challenges hence the overruling of the challenge to Black for cause defrauded him of his statutory limit. Some language is found on page 423 which indicates that the contention made here by defendant would be sound. So far it is pure dictum. It is quite evident from the remainder of the opinion that the sole ground of reversal was defendant's deprivation of his statutory number of peremptory challenges. Had defendant in the instant case challenged the juror Nelson peremptorily and thereafter exhausted all his challenges, he would be entitled to the presumption that an objectionable juror, whom he was entitled to challenge for cause, had been forced upon him and thus one of his statutory peremptory challenges had been taken from him. He would then be within the rule in the Denver Tramway case, so far a sound rule based upon good reasoning.

The Endowment case, supra, likewise contains some language which, standing alone, might justify the inference drawn. But, considered as a whole, we think the contrary is true. It does not appear therein whether counsel had exhausted their peremptory challenges. The presumption is justified that they had. In any event three jurors were involved, all of whom had answered falsely. The court recognizes the general rule above mentioned, but makes an exception in that case. The real reason given is that the jurors were otherwise probably unfit. They were apparently anxious to serve. After verdict they engaged in a drinking bout with plaintiff's brother who managed his case. The court says it is "more than doubtful whether these jurors were such fair and impartial persons as the parties had a right to demand, and upon this ground, also, the judgment of the court below must be reversed." If it was the court's intention to go further than this indicated

then this is the only case cited supporting the position of the defendant here and no reason whatever, good or bad, is given to uphold it.

In some respects *Shulinsky v. Boston & Maine R. R. Co.,* 83 N. H. 86, 139 Atl. 189, might give even stronger support to inferences drawn for defendant than the others just cited. But upon careful examination it turns out to be worse because there the false information given prevented a party from exercising a peremptory challenge and so it falls clearly within the rule above cited and herein relied upon.

One other inference should be disposed of, i. e., that Nelson's concealment of service, or false answer, was intentional, prompted by a desire to serve, and hence indicating bias and prejudice. That question was, of course, one peculiarly for the trial judge. He presided on the voir dire examination; saw and heard the juror and was cognizant of all the circumstances. His denial of the motion for a new trial evidences his finding that Nelson indulged in no deliberate deception. In this he is supported by the record and his resolution is binding here.

It should here be observed that if the situation in El Paso county was anything like as bad as the defendant would have us believe, some hint of it must have reached defendant's counsel. If not, the appearance of a deputy sheriff on the panel should have warned him. In any event ten days elapsed between the time of the return of the special venire and the beginning of the trial. Its importance and the length of time thus allowed certainly justified some investigation of this special venire and it would have required little effort to disclose this and all the similar objections urged on the motion for a new trial, and here, if in fact they had merit.

For the first time, apparently, the exact question here dealt with is squarely before this court. In disposing of it we should not be in the least misled by loose language

or false reasoning in the decisions of other jurisdictions or the works of the text writers. Our duty is to construe our statute as it is written and according to the apparent intent of the Legislature. Nor are we permitted to indulge the presumption that one of its purposes was to furnish a loophole through which a felon, after a fair trial and a verdict of guilty, might make his escape. We will avoid such a construction by giving due consideration to the following wise observations of one of our ablest judges:

"What is the plain common sense of the matter? Common sense and the courts are not strangers; indeed, the relations between them usually are, and always should be, intimate and cordial. * * * Our Legislature repeatedly has endeavored to make it plain that, in both criminal and civil procedure, substance, not form, is the controlling consideration. * * * It does not appear that by the error of the trial court the defendant's substantial rights were prejudiced in the slightest degree." Special concurring opinion of Mr. Justice Butler in *Waite v. People*, 83 Colo. 162, 262 Pac. 1009.

We will also do well, in cases such as the present, to bear in mind the admonition of our former distinguished Chief Justice Campbell, laid down for our guidance forty-five years ago in the case of *Short v. People*, 27 Colo. 175, 186, 60 Pac. 350: "We should not be astute to find reasons for reversal where guilt so manifestly appears and where a fair trial is had."

The judgment is affirmed.

Mr. JUSTICE KNOUS, Mr. JUSTICE JACKSON and Mr. JUSTICE HILLIARD, dissent.

Mr. JUSTICE KNOUS dissenting.

I am convinced that defendant should be accorded a new trial because of the deception perpetrated by the

juror Nelson as to his qualifications while under voir dire examination.

I doubt whether in the many decisions of this court there can be found one in which the court has made a more extreme exertion of power or one so little supported or explained either by the law or the record. To demonstrate the erroneousness of the result and to the end that the evaluation of this decision as a precedent may not be made without a consideration of the law attending, I deem it proper to file this rather extended dissenting opinion.

Defendant, an indigent negro, was assigned counsel, who ably and in keeping with the highest traditions of the profession, represented defendant in the trial, and prosecutes this proceeding in error, without expectation of monetary consideration other than the nominal amount permitted by statute. The incident in examination furnishes the basis of the first and principally stressed assignment of error.

The record is that on voir dire examination of the jurors, such counsel, ostensibly having in mind section 53, chapter 95, '35 C. S. A., quoted at length in the court opinion, asked the general question of the jurors then sitting in the box, including Nelson, as to whether any of them "had served upon a jury in El Paso county, Colorado, at any prior time within one year next preceding the date of the trial, and if any of them had done so, to indicate the same by raising their hands;" counsel further asked them "to indicate the same if they had served upon a regular jury in El Paso county, either district or county court, within one year of the date of said voir dire examination"; that Frank Hallbauer indicated that he had so served and was excused upon verification thereof; "that juryman C. R. McElwain so indicated that he had served, but was not sure of the time; that the clerk of the court checked as to C. R. McElwain and discovered that he had not served as juryman and he was not excused. Nelson made no answer

either by gesture or word to counsel's interrogatories, when propounded or during the colloquies with other prospective jurors on the topic. He was permitted to remain on the jury and signed the verdict as foreman. Subsequent to the verdict but before motion for new trial was made, counsel for defendant discovered, as is admitted to be the fact, that on July 7, 1942, at the May, 1942, term of the district court of El Paso county, Nelson served on, and also acted as foreman of, the jury in a civil case. The trial in the case at bar fell in the January, 1943, term and commenced on April 28, 1943, the day of the voir dire examination herein. It is unquestioned that the circumstance of the prior jury service of Nelson was unknown to defendant and his attorney until after the trial and verdict.

In the new trial proceedings there was presented by the people an affidavit of Nelson wherein he stated, inter alia, that at the time the questions in consideration were propounded, he was "fully convinced in his own mind that he had not served on the jury within the past year;" that he did not know defendant or any of the facts of the case; that he was wholly unbiased and unprejudiced; that he had no desire to sit on this particular jury and did not wilfully fail to disclose the fact of his prior jury service; that his verdict was based upon the evidence adduced and the court's instructions and that he acted fairly and impartially to the best of his ability. It is to be observed that Nelson did not deny that he heard and understood the inquiries of counsel on the subject, but attributes his failure to respond truthfully, to other factors. Considering, as stated in 31 Am. Jur., p. 635, §105, concerning the voir dire examination of jurors that: "Probably the typical practice is to ask them certain statutory or routine questions collectively, and then to proceed with the examination of them individually," it cannot well be said that defense counsel was derelict in exercising proper diligence to

ascertain the facts with reference to the prior jury service of each of those then in the box.

By actually sitting in the trial of the preceding civil case as distinguished from only having been "summoned" for jury duty at the time, Nelson had "served as a juror" within the contemplation of section 53, supra. *Waite v. People,* 83 Colo. 162, 262 Pac. 1009. Thus, had the fact as to the time of such service, now admitted by Nelson, been disclosed by him on his voir dire examination, the court would have had no alternative other than to sustain a challenge for cause to him. *Denver City Tramway Co. v. Kennedy,* 50 Colo. 418, 117 Pac. 167.

Thus the record shows conclusively: (1) That in fact the juror Nelson by reason of his prior jury service within the preceding year *was* subject to challenge for cause; (2) that this fact was unknown to defendant and his counsel until after verdict; (3) that the juror was questioned as to his prior jury service on his voir dire and falsely concealed facts which, if disclosed, would have furnished an undeniable basis for his being set aside for that cause.

Further, as will appear from the authorities hereinafter to be cited, it must be accepted, as defendant asserts positively to be the fact, that the deception of Nelson misled defendant into foregoing his right of peremptory challenge.

The established law applicable to the undisputed facts shown by the record is clear and unusually harmonious and in all particulars is in *direct opposition* to the conclusions expressed by the majority. Demonstratively, it is said in Hayne New Trial and Appeal, vol. 1, (Rev. ed.), p. 226, §45: "Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge. If on ascertaining the truth he were not allowed to present the matter

on motion for a new trial, the grossest injustice might be done. * * * This would be contrary to the first principles of justice. And accordingly, in most states, the fact that a juror answered falsely as to his qualifications is a recognized ground for new trial."

· An analysis of the views of the appellate courts on the question in consideration is to be found in 39 Am. Jur., p. 65, §45; where the following is expressed (italics mine): "It seems generally agreed that when matters which might establish prejudice or work a disqualification of a juror are actually gone into upon the voir dire examination and false answers are given or deception is otherwise practiced, as the result of which a juror, although disqualified in fact, is accepted, the party misled or deceived thereby, upon discovering the fact of the juror's incompetency or disqualification after trial, may assert that fact as ground for and obtain a new trial, upon a proper showing of such facts, *even though, it has been held, the bias or prejudice is not shown to have caused an unjust verdict;* it is sufficient that a party, through no fault of his own, has been deprived of his constitutional statutory guaranty of a trial of his case before a fair and impartial jury. * * * *Apparently no distinction is to be made between merely statutory disqualifications and those which affect the impartiality of the juror."* As the basis of the general rule as so stated, are listed seventeen cases from various jurisdictions. In support of the first italicized statement are cited the cases of *Foreman v. State,* 203 Ind. 324, 180 N.E. 291, and *Rhoades v. El Paso R. Co.* (Texas), 248 S.W. 1064, 27 A.L.R. 1048, and as the sources of the second are given the decisions in *Nomaque v. People,* Breeze, (Ill.) 109 (Beecher's ed. 145), 12 Am. Dec. 157, overruled on other grounds in *People, ex rel. Merrill v. Hazard,* 361 Ill. 60, 63, 196 N.E. 827; *Drury v. Franke,* 247 Ky. 758, 57 S.W. (2d) 769, 88 A.L.R. 917; *State v. Lauth,* 46 Ore. 342, 80 Pac. 660, 114 Am. St. Rep. 873. Of the matter, it is said in 46 C.J., p. 91, §49: "If, by

reason of false information furnished under the court's authority and in organizing the jury, a peremptory challenge as to a prospective juror is not exercised, the party having the right to challenge is entitled to a new trial after verdict against him." Citing *Shulinsky v. Boston R. Co.,* 83 N.H. 86, 139 Atl. 189. The single decision noted in American Jurisprudence, supra, as expressing a contrary view is *Leeper v. State,* 29 Tex. App. 63, 14 S.W. 398, which is cited in the majority opinion herein, wherein it was held, not without vigorous dissent, that the circumstance that a juror on voir dire answered falsely that he was a householder of the county and freeholder of the state was not a valid ground for new trial, under a Texas statute, of which, as will appear, no counterpart exists in Colorado, requiring a showing of injury to the rights of the defendant in a criminal case as a condition to granting such relief. While the foregoing case was affirmed by the United States Supreme Court, 139 U.S. 462, 11 Sup. St. 577, 35 L.Ed. 225, the opinion therein expressed that the alleged disqualification of the juror and certain other procedural objections (page 468), "were all matters with the disposition of which, as exhibited by this record (of appeal as distinguished from one on writ of error), we have nothing to do." It further may be observed the Texas court said the imposition in that state of property ownership as a condition to jury service was grounded on the policy of inducing men to become permanent residents and so adding to the prosperity of the community. This objective is in sharp contrast with the purpose of our section 53, supra, which, as stated by the revered Mr. Justice Butler in his special concurrence in *Waite v. People, supra,* at page 167, "was intended to serve two purposes; to relieve persons from excessive jury service, and to exclude professional jurors. *Atlanta, etc., Ry. v. Ray,* 70 Ga. 674; *Bissell v. Ryan,* 23 Ill. 566 (opinion by Breese, J.); *Burden v. People,* 26 Mich. 162 (opinion by Cooley, J.). The provision should be

construed liberally so as to carry out its purposes."

Notwithstanding, as appears from the foregoing, that with the exception of *Leeper v. State, supra,* which, as shown, was grounded on a statute, *no* court hitherto has held that the party who is a victim of the deception here admitted is not entitled to new trial without the necessity of showing that the participation of the offending juror caused an unjust verdict and that in the language of American Jurisprudence, supra: "No distinction is to be made between merely statutory disqualifications and those which affect the impartiality of the juror," the majority here propounds for what seems to be the primary basis of its decision: "Nelson then presumably, and as the trial disclosed, and as the trial judge was convinced, a capable, fair and impartial juror, became objectionable only when at the close of the trial defendant learned that Nelson had voted for his conviction. Does that call for a reversal? *Under a well established rule, unquestioned and constantly followed, it does not unless defendant was prejudiced by the error.*"

Not a single precedent is cited in support of this statement. The reason for this deficiency is made very clear by the following language of the Supreme Court of Louisiana in *State v. Nash,* 45 La. Ann. 1137, 1145, 13 So. 734: "We have been at pains to make quite an extensive examination of the authorities bearing on this subject, and while we discover some conflict of opinion on the question whether the incompetency of a juror, though discovered only after verdict, will be ground for new trial in absence of due diligence in testing his qualification by proper inquiries during the examination on the voir dire, we find no authority holding or suggesting that the new trial can be denied when the party has exercised full diligence in questioning the juror on his void dire and has been misled and deceived into accepting an incompetent juror by his own answers, avowing his competency, which are subsequently

discovered to be false. We do not believe such a precedent exists or will ever be made." In the foregoing case a juror had stated on his voir dire that he was twenty-one years of age. Following the trial it was discovered that he was under the age stated and so disqualified from jury service. A new trial was ordered upon the proof of these simple factors and no more.

Patently, also, the decision of the majority is in direct conflict with our pronouncements in *Denver City Tramway Co. v. Kennedy, supra,* wherein, a reversal was ordered for the failure of the trial court to sustain a challenge for cause grounded upon the precise section of our statute (§53, supra), herein involved, as follows: The challenge here was a statutory one, the court did not attempt to exercise any discretion, but held, from the facts disclosed, that the juror did not come within its provisions so as to make him subject to challenge for the reasons stated in the act. In this the trial court erred, and it could be just as consistently argued that a judgment should not be reversed where the court had limited the number of peremptory challenges to less than the number allowed by law, unless the complaining party could show some further injury occasioned to him thereby which could not usually be done in a case like the one under consideration. Here a right given the defendant by statute was denied. The injury complained of was the denial of a statutory right; that is the error the court committed, and that is the injury complained of, the result of which compelled the defendant to exhaust one of its peremptory challenges on this juror when it was entitled to have him excused without so doing; this left the defendant one less peremptory challenge to be used upon others. The evidence was conflicting. Had the objection been sustained, the personnel of the jury would have been different. As to what effect this might or might not have had upon the ultimate result of the trial is a matter of pure conjecture, and is not for the trial court, or even this court to make a

guess at. When a privilege, which the legislature has seen fit to give to a party litigant, has been denied him and it is properly complained of on review and this court ascertains that such right was denied him, it has performed its duty. To go any further would be to add to the statute a matter which the legislature did not deem proper to incorporate in it and is to undertake judicial legislation, which the courts should be exceedingly careful to avoid."

The majority opinion concedes that the foregoing statement "indicates that the contention made here by defendant would be sound" but denies its decisive effect by the Machiavelian process of branding it "pure dictum." The force of a well considered precedent in which, as any who read may discover, the language in examination formed the foundation for the decision announced, properly may not be so avoided. Where a party is misled by false information furnished by a juror on his voir dire, as here: "Argument from a finding that the trial was fair is not pertinent. The question is whether a proper tribunal was established, and not whether an improperly established tribunal acted fairly. If the jury is an unauthorized or unfairly established tribunal, the party whose right of challenge is impaired is not required to submit to its verdict. He has not had such a jury trial as the law provides." *Schulinsky v. Boston R. Co., supra.*

In the opinion in the latter case, as disclosing the rationale of the rule, it also was said:

"As trials are ordinarily conducted, the voir dire is of service not only in enabling the court to pass upon a juror's qualifications, but also in assisting counsel in their decision as to peremptory challenges. If the court has found a juror indifferent both on principal cause and to the favor, the examination may be, and often is, useful to the parties in passing on the exercise of their right. In effect, it helps in the discretion which the parties have as well as the court. * * *

"When the information is furnished under the court's authority, the right of challenge includes the incidental right in its protection that the information shall be true. It is immaterial whether the information comes from examination of the jurors or from other sources, so long as it is furnished as a part of the judicial proceeding of establishing a panel for the trial of a cause. 'Juries, in this state, are organized under the direction of the court' (*Rowell v. Railroad,* 58 N.H. 514), and if by reason of false information furnished under the court's authority and in organizing the jury, a peremptory challenge as to a prospective juror is not exercised, the party having the right of challenge is as effectively deprived of his right as though the right were denied. The right to challenge implies its fair exercise, and if a party is misled by erroneous information obtained through application to the court, the right of rejection is impaired. False information thus obtained and relied on is as destructive of a fairly constituted jury in its application to a peremptory challenge as to a challenge for cause. If the court by reason of false information found a juror indifferent, the illegality of the verdict would be unquestioned. A verdict is equally illegal when a peremptory challenge is not exercised by reason of such information given as incident to the drawing of the jury and to the court's undertaking to secure a fair trial."

Say the majority herein of the foregoing decision: "In some respects * * * [it] might give even stronger support to inferences drawn for defendant than the others just cited. But upon careful examination it turns out to be worse because there the false information given prevented a party from exercising a peremptory challenge * * *." What less happened in the case at bar may I inquire? In the Shulinsky case, supra, the juror on being asked whether he had had business relations with the plaintiff remained silent just as did Nelson when questioned as to his jury service herein. In both cases

the truth required an affirmative answer, which was not forthcoming and in each the defendant, lulled by the false conduct of the juror, did not challenge him. In both, the verdict was adverse to the defendant and in each the erring juror made affidavit admitting the truth and pleading that the falsehood was unintentional. In both the trial court denied new trial upon the finding, made directly in the Shulinsky case and inferentially in the one at bar, that the trial was fair and no prejudice to the defendant shown. The Supreme Court of New Hampshire, in the well reasoned opinion hereinabove quoted from, supported profusely by apt authorities, held that where the facts showed that false information was given as to the qualification of a juror and that it was relied upon without lack of diligence, right to a new trial followed as a matter of law and without any necessity of affirmatively showing that the presence of the offending juror accounted for the verdict. The majority of the Colorado Supreme Court, without citing a single precedent and in disregard of all, reaches a contrary conclusion. Such is the only difference between the two cases. If "worse," as employed by the majority, has a relative degree, the wrong in the case at bar is "worser" than in the Shulinsky case, in that herein, by the false information given, the defendant not only was deprived of the right to intelligently exercise a peremptory challenge, but also was denied a statutory challenge for cause, which was not available in the Shulinsky case. In fact, many appellate courts have granted new trials as the result of erroneous information coming from jurors respecting their qualifications, even though had the answer been true the fact would not have been ground for challenge for cause. Typical of these is *Pearcy v. Michigan Mutual Life Ins. Co.*, 111 Ind. 59, 64, 12 N.E. 98, 60 Am. Rep. 673, wherein the opinion states: "There are many cases in which the social and business relations between the juror and a party will sustain a challenge for cause, and the authorities go

very far toward establishing a rule which would make an interest such as that held by Bowman a cause for rejecting the juror. *Davis v. Allen,* 11 Pick. 466; Thom. & Merr. Juries, section 179; Proff. Jury Trials, section 177. But we need not and do not decide whether the interest of Bowman was such as would have warranted a challenge for cause, for it is enough for the present to decide that the information sought by the question was relevant and material for the purpose of enabling the appellant to intelligently exercise her right to interpose a peremptory challenge."

If the cases of *State v. Patterson,* 183 Wash. 239, 48 P. (2d) 193, and *Williams v. United States,* 3 F. (2d) 933, listed in the court opinion, are cited as supporting the disposition ordered, a point upon which I am uncertain, they manifestly are wide of the mark. In the first it was held that a motion for new trial based on counsel's affidavit that a juror had admitted after verdict that he was not a taxpayer, was properly denied where juror had qualified himself on his voir dire and had refused to make an affidavit that he was not a taxpayer. In the case at bar the juror's prior service as such within the year was admitted and also found to be the fact by the trial court. This factual difference also distinguishes the second case, *Williams v. United States, supra,* wherein the circuit court of appeals said: "We are cited to no authority that, according to the juror's statement, he was not a householder," which the moving party claimed had been misrepresented on the voir dire. In other words, in both these cases the jurors' statements were held to be true factually, while confessedly the conduct herein was false.

As a further basis for the disposition ordered by it the majority expresses that the trial court's "denial of the motion for a new trial evidences his finding that Nelson indulged in no deliberate deception. In this he is supported by the record and his resolution is binding here."

This statement is fallacious in two particulars: First: "The fact that the false information was unintentional, and that there was no bad faith, does not affect the question, as the harm lies in the falsity of the information, regardless of the knowledge of its falsity on the part of the informant; while willful falsehood may intensify the wrong done, it is not essential to constitute the wrong; that the injury is brought about by falsehood, regardless of its dishonesty, and the effect of the information is misleading, rather than a purpose to give misleading information is the gist of the injury; when the fact appears that false information was given, and that it was relied upon, the right to a new trial follows as a matter of law." *Drury v. Franke, supra.* See, also, *Shulinsky v. Boston R. Co., supra.*

In *Pearcy v. Michigan Mutual Life Ins. Co., supra,* it is said the statement of the juror, generally synonomous with that of Nelson herein: "that he was influenced solely by the law and the evidence, does not remedy the wrong. A juror who has deceived or misled the court, or the counsel, by a false or incorrect answer, can not, by a subsequent statement, repair the legal injury caused by his conduct on his preliminary examination. *Hudspeth v. Herston,* 64 Ind. 133; *Lamphier v. State, supra* [70 Ind 317]; *Block v. State, supra,* [100 Ind. 357]; *Territory v. Kennedy,* 3 Mont. 520; *United States v. Upham,* 2 Mont. 170."

Second: Under the admitted circumstances herein the denial of a new trial was not discretionary with the trial court. Such is established by *Shulinsky v. Boston R. Co., supra,* wherein the opinion at page 90, recites: "While the trial court first passes upon a motion or petition for a new trial and determines all disputed issues of fact, yet when the facts are thus found, or when only one conclusion can reasonably be drawn, the law relative thereto is not a discretionary matter. *St. Pierre v. Foster,* 75 N.H. 10 [70 Atl. 289]. The facts here appearing that false information was given as an incident relating

to the trial and that it was relied upon without lack of due diligence, the right to a new trial follows as a matter of law." See, also, *Denver City Tramway Co. v. Kennedy, supra.*

The majority opinion herein mentions the distinction between challenges propter affectum and propter defectum and intimates that the incident in examination comes within the latter category, which it said, brands it as harmless error for which a reversal may not be had unless prejudice to the movant is shown. In so far as I can discover these distinctions never have been recognized in Colorado, but if such should attend, the inapplicability of the references as a factor in the case is disclosed by the opinion in *Endowment Rank of Order of K. P. v. Steele,* 107 Tenn. 1, 63 S.W. 1126, a case practically on "all fours" with the proceeding at bar. Therein it was said:

"It appears that three of the jurors who sat upon the case, to wit, Munroe, Felts, and Flanaghan, had served upon the jury in Shelby County within two years before they were called upon the jury in this case, and were therefore incompetent. It appears that the jury was placed in the box and tendered to the parties in a body. Counsel for the Order, when the jury was thus tendered, asked the question of them collectively if any one of them had served as a juror on a regular panel in any court in Shelby county within the last two years, and each shook his head.

"It appears also that when this jury was made up on the Monday preceding the trial, for service generally in the court, two of them, Munroe and Flanaghan, were examined separately and individually by the presiding judge, and each answered that he had not served on any regular jury in the county of Shelby within the two years next preceding. The other juror, Felts, appears not to have been present and was not examined on that occasion, but it is reasonably certain from the record

that he was examined when he was afterward chosen, though he states he was not.

"We are of the opinion that these jurors were not the good and lawful men to whom the parties were entitled as jurors under article 1, section 6, of the Constitution. *Neely v. The State,* 4 Bax., 180. They were not competent to serve as jurors, and were subject to challenge. Shannon's Code, §5090.

"While it is not a good objection generally, after verdict, that a juror who sat on the case was incompetent propter defectum, and it does not matter whether the fact was known to the parties or not, yet this rule proceeds upon the idea that the juror might have been examined before being selected or the parties might have ascertained the fact and excluded such juror by challenge. But in this case the counsel for the company exercised reasonable precaution to ascertain if the jury or any one of them was incompetent by inquiring of the jurors themselves, and had the assurance of competency, from the presumption that the trial Judge examined them upon that point when they were placed on the regular jury, and the actual fact of a second examination by himself. The jurors explained that they were mistaken about the time when they served, and did not intend to state a falsehood or mislead. However this may have been, the fact of incompetency existed, and counsel for the company was misled and deceived, after taking proper precautions to ascertain the fact, and by the jurors themselves while either actually or virtually under oath, and it was not simply a case of want of knowledge of incompetency nor a waiver of incompetency, with or without knowledge of its existence, in which case the exception being propter defectum, must be considered as waived; but it is a case where the exception was reasonably [seasonably] made, or would have been made but for the incorrect or false statements of the jurors, which misled the defendant's counsel and influenced his action. It is true counsel might

have examined the jury books of the court, and such courts in Shelby county as had jurors, but this would have been an extraordinary precaution which would have consumed time and delayed the court, and he could not be required so to do."

It will be observed that additionally the foregoing opinion effectively answers the insinuations of the majority of the lack of diligence of defendant in not discovering Nelson's status before trial.

Most erroneous, it seems to me, is the oft-repeated assertion in the court opinion that because defendant did not exhaust all of his peremptory challenges, he is precluded from claiming reversible error on the point in discussion. This argument entirely overlooks the fact that the very basis of defendant's assignment is that the misconduct of Nelson deprived him of the opportunity of interposing a valid challenge for cause and denied him information upon which he might have intelligently exercised a peremptory challenge. Counsel examined Nelson as to his possible disqualifications and because of the juror's deception no ground or basis of challenge on principal cause or to the favor was disclosed. All of the decisions agree that defendant had a right to rely on the truth of the juror's statement in this respect. Naturally and obviously in these circumstances, defendant believed, as he had every right to, that Nelson was a qualified and competent juror when he was accepted. But who can say logically that had the juror answered truthfully the defendant would not have challenged him? The circumstance, as appears from the record, that other talesmen with the same disqualification were promptly removed upon the development of the fact, should demonstrate that such action would have followed with respect to Nelson. Scores upon scores of decisions of appellate courts involving the point in question are to be found in the books, and in not *one* of them, I assert, has any court previously considered or suggested that the exhaustion of per-

emptory challenges is a condition precedent to securing of relief based upon the giving of false information by a juror while under voir dire. In fact, in some cases the request for relief is grounded on the assertion that the aggrieved party had *not* exhausted his peremptory challenges. Thus in *Foreman v. State, supra,* wherein the appellant had exercised but five of the ten peremptory challenges allowed by statute, counsel averred "that they had not used more than five peremptory challenges, and had the juror answered the question truthfully * * * they would have exercised their right of a peremptory challenge to the juror." Counsel here protests similarly. The rule that error cannot be predicated on the overruling of a challenge for cause, where defendant had not exhausted his peremptory challenge, invoked in *Flor v. People,* 73 Colo. 403, 215 Pac. 875, and *Waite v. People, supra,* cited by the Attorney General, is grounded upon waiver. Its theory is that where a party is put in possession of the actual facts as to the competency of a juror by interrogation on voir dire, his cause is not injured so long as by peremptory challenge he may still eliminate the undesirable juror, even though the court may have been wrong in refusing to excuse for cause. Patently, this principle has no pertinency to a situation where, as here, a party, without knowledge of the true facts, has been deceived with respect thereto by the false answer of the juror and as a result is deprived of any right of challenge either for cause or peremptorily. Certainly it cannot be maintained soundly that a waiver may be effected by a fact concealed from the party attempted to be charged therewith. While it may be possible to argue that the right of challenge may have been waived by defendant's acceptance of Nelson to hear the cause, in law the right to rely on the information adduced from him was not. The defendant took his chances in accepting the juror because of reliance on such information, but under the

precedents, cannot be coerced into taking a chance of the information proving to be erroneous.

As a practical matter, if the pronouncement of the majority in this particular is to become the rule of practice in this jurisdiction, in the future every lawyer to protect his right of review based upon the possibility of the false answer of a juror touching upon his competency, of necessity will be forced to exercise *all* his peremptory challenges and this without regard to sound reason therefor or the expense to the public which will attend.

As I conceive, the authorities I have called attention to hereinabove demonstrate the frailty of the legal foundation of the opinion of the court, and establish particularly that to be entitled to a new trial it was not incumbent on defendant to show affirmatively that Nelson's presence on the jury induced an unfair consideration of the case. However, if such was an essential, I believe, considering the purposes of section 53, supra, that real prejudice as to such factor is manifested by the record. As has been shown hereinabove, section 53, supra, has two objectives: first, to relieve persons from excessive jury service, and, second, to exclude professional jurors.

Of the second purpose, with which we are concerned here, Mr. Justice Butler, in his specially concurring opinion in *Waite v. People, supra,* at page 168, in part, has to say: "Professional jurors have been from time immemorial a menace to the administration of justice. No less an authority than Mr. Justice Cooley described them as 'persons who, from a disinclination to steady employment, and sometimes from more reprehensible motives, either through the favor of officers or by solicitation, succeeded in being summoned to an important duty, the responsibilities of which they did not feel, and the trust imposed, it was sometimes their purpose to abuse.' *Burden v. People,* 26 Mich. 162. Mr. Justice Breese, of the supreme court of Illinois, pays his re-

spects to that class of undesirables in these words: 'There had grown up, in our state, a formidable corps of professional jurors; persons, who, having no honest means of livelihood, or not resorting to them, if they had, were found, at every term, hanging about the courthouses, importuning the sheriffs and their deputies, and seizing every occasion to be put upon the juries— making their living, in fact, by jury service. If they could not get upon the petit jury, they were content to serve on the grand jury, as the pay was the same; one or the other jury, they would contrive to get on. This disgusting and disreputable eagerness to be upon juries, occurred at every term.' *Bissell v. Ryan,* 23 Ill. 566." In view of experience, as so expressed, it should be self-evident that in enacting section 53, supra, the legislature considered the inclusion on juries of professionals, with their inherent bias and interest, as being potentially prejudicial to the rights of litigants, and so to expedite their removal and to protect the integrity and impartiality of our jury system, made jury service within the year a ground of challenge for cause.

Said Mr. Justice Butler, in the specially concurring opinion in the Waite case, at page 169: "If several professionals were called into the jury box at the same time, the injustice would be intolerable." At the least such an occurrence transpired here. By coincidence or otherwise, of the twenty men summoned upon open venire to try the cause, six, including Nelson, had been summoned on special venires for jury service within the period commencing in June, 1941, of whom three had served, one as foreman, in murder cases in which verdicts of guilty were returned; one of the latter, in December, 1941, also served on the jury in a civil case, upon which the remaining three likewise were chosen. Within the same period two of the six had been summoned on the regular jury panel and had acted in several cases. Besides having sat on the jury in a civil case, in July, 1942, Nelson had served on a jury in an-

other civil matter in December, 1941. Also, additionally included in the twenty specially summoned in the case at bar were a deputy sheriff and a gunsmith whose chief employment was with the Colorado Springs Police Department.

In this atmosphere of "intolerability" as denominated by Mr. Justice Butler, it seems to me a deprivation of the right to challenge, both for cause and peremptorily, accomplished by the deception of one of the professionals on the panel, cannot be held to be other than prejudicial per se to the party denied.

As expressive of my feelings herein, the author of the court opinion once said (dissenting opinion, Mr. Justice Burke, *O'Loughlin v. People,* 90 Colo. 368, 390, 10 P. (2d) 543), in language more eloquent than I can command: "I do not predicate what I have to say here upon any presumption that there is not, in this record, evidence to support the verdict. I say only that a trifling error might have tipped the scales, hence we must be sure that the forms of law were followed, * * *" and: "It has taken too many centuries, too much blood, and too many hard won constitutions, to insure men and women fair and impartial trials * * * to permit these rights to be now prejudiced by hasty action."

I am equally sure that in the case at bar the "forms of law" were denied defendant in the particulars hereinabove mentioned and so believe a new trial should be ordered.

I am authorized to state that Mr. Justice Hilliard and Mr. Justice Jackson concur in this dissenting opinion.